1 Michael Rapkine (#222811)
  mrapkine@afrct.com
2 ANGLIN, FLEWELLING, RASMUSSEN,
  CAMPBELL & TRYTTEN LLP
3 199 South Los Robles Avenue, Suite 600
 Pasadena, California 91101-2459
4 Tel: (626) 535-1900 | Fax: (626) 577-7764

5 Attorneys for Defendant
 WELLS FARGO BANK, N.A.
6 ("Wells Fargo")

7

*ORIGINAL FILED*

*2013 JUL 19 P 3: 40*

*RICHARD W. WIEKING*
*CLERK, U.S. DISTRICT COURT*
*NORTHERN DISTRICT OF CALIFORNIA*

8     UNITED STATES DISTRICT COURT

9    NORTHERN DISTRICT OF CALIFORNIA

**HRL**

10

**CV 13 3387**

11 ELIZABETH ANN WILLIAMS,   CASE NO.:

12     Plaintiff,

13   vs.     **NOTICE OF REMOVAL BY DEFENDANT WELLS FARGO, PURSUANT TO 28 U.S.C. § 1332**
14 WELLS FARGO BANK, N.A., a national bank; **[DIVERSITY JURISDICTION]**
 and DOES 1 through 50 inclusive,

15

16     Defendants.

17

18 TO PLAINTIFF, HER COUNSEL OF RECORD, THE CLERK OF THE ABOVE-ENTITLED

19 COURT, AND THE HONORABLE UNITED STATES DISTRICT JUDGE, AS ASSIGNED:

20    PLEASE TAKE NOTICE that defendant WELLS FARGO BANK, N.A. ("Wells

21 Fargo"), hereby provides this Notice of Removal based on diversity of citizenship, pursuant to 28

22 U.S.C. § 1332, and removes to the district court the state court action described below.

23 **1. THE STATE COURT ACTION**

24    On June 27, 2013, the complaint in Case No. 113-CV-248665, entitled as captioned

25 above, was filed with the Superior Court of the State of California, County of Santa Clara (the

26 "State Court Action"). A true and correct copy of the complaint is attached hereto as <u>Exhibit A</u>.

27 Attached collectively hereto as <u>Exhibit B</u> are all other papers in Wells Fargo's possession, either

28 filed by plaintiff or issued by the state court.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

## 2.   JURISDICTION: DIVERSITY OF CITIZENSHIP

This Court has jurisdiction of this case under 28 U.S.C. § 1332 because the citizenship of the parties is entirely diverse and the amount in controversy exceeds $75,000.00.

### A.   Plaintiff is a Citizen of California.

Plaintiff Elizabeth Ann Williams ("plaintiff") is a citizen of California based on domicile, as she alleges residency in Santa Clara County and claims ownership of that parcel of real property situated in Santa Clara County, commonly known as 2490 Scarlett Road, Gilroy, California (Comp. 1:20-23). *Heinz v. Havelock*, 757 F. Supp. 1076, 1079 (C.D. Cal. 1991) (residence and property ownership are factors in domicile for diversity jurisdiction); *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("Residence alone is not the equivalent of citizenship, but the place of residence is prima facie the domicile.)

### B.   Defendant Wells Fargo Bank, N.A. is a Citizen of South Dakota.

Effective December 31, 2007, the plaintiff's original lender (World Savings Bank, FSB) changed its name to Wachovia Mortgage, FSB.  (*See* Exhibit C [Nov. 19, 2007 OTS Letter]). Effective November 1, 2009, Wachovia Mortgage, FSB, was converted to Wells Fargo Bank Southwest, N.A., and merged into Wells Fargo Bank, N.A.  (*See* Exhibit D [Nov. 1, 2009 OCC Certification Letter]).  The citizenship of the surviving entity from a merger – here, Wells Fargo Bank, N.A. -- is used to determine citizenship. *Meadows v. Bicrodyne Corp.*, 785 F.2d 670, 672 (9th Cir. 1986) (using citizenship of surviving entity for diversity).

Pursuant to 28 U.S.C. § 1348, defendant Wells Fargo Bank, N.A., as a national banking association, is a citizen of the state where it is "located."  In 2006, the Supreme Court, after a thorough examination of Section 1348 and existing case law, held that "a national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of incorporation, is located." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 306-307 (2006) ("*Schmidt*").

Wells Fargo is a citizen of South Dakota, for its main office is located in Sioux Falls, South Dakota.  Attached hereto as Exhibit E are true and correct copies of the FDIC Profile and the Articles of Association for Wells Fargo Bank, N.A., as issued by the Office of the

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  Comptroller of the Currency, Administrator of National Banks, reflecting that Wells Fargo (at

2  Article II, § 1) has its main office in Sioux Falls, South Dakota.

3         **i.**   **Post-*Schmidt* Decisions *Uniformly* Hold That A National Bank Is A**

4              **Citizen Of Only One State.**

5      While the Supreme Court in *Schmidt* did not decide whether a national bank is also a

6  citizen of a second state, it held that Section 1348 did not include the principal place of business

7  language: "[Section] 1348, however, does not refer to 'principal place of business'; it simply

8  deems such associations 'citizens of the States in which they are respectively located.'" *Schmidt*,

9  at 315, n.8 and 317, n.9. (calling 28 U.S.C. § 1332(c)(1) a "counterpart provision" to § 1348).

10  "[T]he fairest reading of footnote nine is that the Supreme Court expressed skepticism over

11  whether the term 'located' in §1348 included a national bank's 'principal place of business' in

12  view of the absence of such term in the statute." *Excelsior Funds, Inc., v. J.P. Morgan Chase*

13  *Bank, N.A.*, 470 F. Supp. 2d 312 (S.D.N.Y. 2006) (rejecting inclusion of the principal place of

14  business test).

15      Since *Schmidt*, the published decisions have <u>uniformly</u> held that Section 1348 does not

16  include the principal place of business test, leaving national banks a citizen of only a single state;

17  that of the main office.

18      In *Wells Fargo Bank, N.A., v. WMR e-PIN, LLC*, 653 F.3d 702, 708-710 (8th Cir. 2011)

19  ("*WMR*"), the Eighth Circuit rejected the principal place of business test because it was not a

20  citizenship test until ten years <u>after</u> Section 1348 was enacted:

21        <u>In 1948, when Congress last amended § 1348, it had not yet</u>
           <u>created principal-place-of-business citizenship</u> . . . . [T]he term
22        'located' referred to the state in which the national bank had its
         main office . . . . [W]hen Congress introduced principal-place-of-
23        business citizenship for state banks and corporations in
         § 1332(c)(1), it made no reference to jurisdictional parity, nor to
24        national banks or § 1348. And nothing in § 1348 indicates that it
         would incorporate by reference any subsequent change in the
25        statutes governing jurisdiction over state banks and corporations.
         These circumstances strongly suggest that . . . Congress . . . left
26        [the jurisdiction landscape] of national banks undisturbed.

27        <u>Had Congress wished to retain jurisdictional parity in 1958, it</u>
         <u>could have unequivocally done so.</u> It did not, and consequently the
28        concept no longer applies. Whether it ought to be revived is a

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   policy question for Congress, not the federal courts.  We will not
    import a jurisdictional concept into § 1348 that was unknown at
2   the time of its adoption.  **Accordingly, we hold that, pursuant to
    § 1348, a national bank is a citizen only of the state in which its**
3   **main office is located.**

4   *Id.* (emphasis added); see also, *Moreno v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS

5   146195 (N.D. Cal. Dec. 21, 2011).

6       Before *WMR*, the published California district court decisions[1] found Wells Fargo to be a

7   citizen of only one state, South Dakota.  "**B. Wells Fargo is not a citizen of California**. . . .

8   this Court decline[s] Plaintiffs' invitation to apply a principal place of business test to Wells

9   Fargo.  Consequently, the Court concludes that Wells Fargo is a citizen of the state in which its

10  main office, as specified in its articles of association, is located.  *See Schmidt*, 546 U.S. at 318."

11  *DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119, 1124 (N.D. Cal. 2010) (bold in

12  original) (also holding:  "[m]oreover, in footnote 9, the [*Schmidt* Supreme Court] recognized the

13  imperfect parity between corporations and national banks…"); see also, *Nguyen v. Wells Fargo*

14  *Bank, N.A.*, 749 F. Supp. 2d 1022, 1028 (N.D. Cal. 2010) ("Wells Fargo is a citizen of South

15  Dakota for purposes of diversity.").

16           **(a)    WMR's Dissent Erroneously Relied on American Surety.**

17      The *WMR* dissent relied on *American Surety v. Bank of Cal.*, 133 F.2d 160 (9th Cir.

18  1943), a case that mistakenly looked to a national bank's principal place of business as the

19  determinative factor in citizenship.  *WMR*, 653 F.3d at 716.  *American Surety* held:

20      No case defining 'located,' in this connection, has come to our
    attention . . . .  There would appear to be a close analogy between
21  such a bank and a corporation national in scope.  The citizenship of
    a corporation is fixed by its principal place of business, a rule
22  which prevails even though it extends its field of endeavor into
    other states under the sanction of the laws of such other states.  *St.*
23  *Louis & San Francisco Ry. Co. v. James*, 161 U.S. 545; *Southern*
    *Ry. Co., v. Allison*, 190 U.S. 326 (citations omitted).  In addition, a
24  logical interpretation of the phraseology of 28 U.S.C.A. § 41(16)
    leads to the conclusion that the 'States in which [national banking
25  associations] are respectively located' are those states in which
    their principal places of business are maintained.

26

27  _____
    [1]  The unpublished decisions are split.
28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  *American Surety*, 133 F.2d at 161-62 (emphasis added).

2      *American Surety* only applied the principal place of business test, to the exclusion of the

3  main office test. *See generally id.*

4      After *Schmidt*, few California district courts have held *American Surety* viable. As

5  detailed below, *American Surety* is erroneous because: (a) it is irreconcilable with *Schmidt*;

6  (b) *American Surety's* premise that "located" is undefined was superseded by statute in 1994;

7  (c) according to the Supreme Court in *Hertz v. Friend*, 130 S. Ct. 1181 (2010), *American Surety*

8  was incorrect to apply the principal place of business test; and (d) *American Surety* is not

9  precedential because it erroneously "assumed" that the principal place of business test was the

10  correct standard.

11          **ii.    Schmidt Abrogated American Surety.**

12      The first case to rely on *American Surety*'s continuing viability, post-*Schmidt*, was

13  *Guinto v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 114986 (E.D. Cal. Oct. 4, 2011).

14  *Guinto* held that, because *Schmidt* did not completely preclude applying the principal place of

15  business test <u>in conjunction with</u> the main office test, *American Surety* is still viable. *Id.* at 11

16  (while *Schmidt* did not decide "whether the bank *was also* located in North Carolina *on account*

17  *of the location of its principal place of business . . . .* [t]his court believes that Footnote 9 is too

18  slender a read" to not follow *American Surety*.) (emphasis added); *accord Rouse v . Wachovia*

19  *Mortgage, FSB*, 2012 U.S. Dist. LEXIS 6962 (C.D. Cal. Jan. 13, 2012).

20      However, *American Surety* strictly applied the principal place of business test. This is

21  inconsistent with *Schmidt*, which unequivocally adopted the "main office" test. *Schmidt,* 546

22  U.S. 307, 318. At most, *Schmidt* allowed the possibility that the "main office plus principal

23  place of business" test could be used. *Id.* at n. 8. (emphasis added). In other words, *American*

24  *Surety* and *Schmidt* held for single, but different standards for citizenship. Using the principal

25  place of business test while excluding the main office test, as *American Surety* did, is

26  irreconcilable with *Schmidt*. *Schmidt* should therefore prevail. See e.g., *Miller v. Gammie*, 335

27  F.3d 889, 900 (9th Cir. 2003) (lower courts are bound by intervening Supreme Court authority

28  where "clearly irreconcilable" with prior Ninth Circuit ruling; cases need not be identical).

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   Recently, the *Flores* court explained that *American Surety* is not good law:

2   **B.  *Schmidt* Abrogated *American Surety***

3   . . .

4   *American Surety* cannot be reconciled with the Supreme Court's
    decision in *Schmidt*.  The *American Surety* court held that '[t]he

5   trial court was right in holding that defendant is a citizen *only* of
    the state in which its principal place of business is located, the

6   State of California.' 133 F.2d at 162 (emphasis added). In other
    words, *American Surety* held that the principal place of business

7   rule is the exclusive test for citizenship of national banks for
    diversity jurisdiction purposes.  In *Schmidt*, in contrast, the

8   Supreme Court interpreted the same word—"located"—to mean
    that a national bank is a citizen of the state in which its main

9   office, as set out in its articles of association, is located.  546 U.S.
    at 307.  Thus, *Schmidt* conflicts with *American Surety*.

10

11  *Flores v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 32648, *6-7 (N.D. Cal. Mar. 12, 2012)

12  (original bold, underline added).

13      *Flores* pointed out that amongst the many uses of the word "located" in the National

14  Bank Act, none refer to the principal place of business.  *Id.* at *6.  In fact, one provision even

15  statutorily links the term "main office" with the term "locate." (discussed, *infra*).

16      **iii.   In 1994, The Statute Superseded American Surety's Premise That the**

17          **Term "Located" Is Undefined.**

18      *American Surety* found that the term "located" was not defined in the Section 1348

19  predecessor statute, stating that "[n]o case defining 'located,' in this connection, has come to our

20  attention." *American Surety,* 133 F.2d at 161–62.  As such, *American Surety* borrowed from the

21  citizenship rule for corporations.  That, however, is no longer viable due to *Schmidt*.  *Schmidt*

22  provided:  "**(B) Home State.**  The term "Home State" means the State in which the main office

23  of a national bank is located."  12 U.S.C. § 36(g)(3)(B)(bold in original).  "State" appears only in

24  the singular form.  *Id.* at n.1.

25      This provision was added by the Riegle-Neal Interstate Banking Act of 1994 (the "1994

26  Act"), § 103, 103 P.L. 328; 108 Stat. 2338, 2352 (12 U.S.C. 36).  While the 1994 Act permitted

27  national banks to operate across state lines for the first time (*Schmidt,* 546 U.S. at 307, n.2), it

28  simultaneously defined, for the first time ("new subsection"), the "Home State" by where its

1     "main office . . . is located." The *Schmidt* Supreme Court used the terms "Home State" or its

2     "main office" as the national bank's citizenship.

3         *Guinto* missed *Schmidt's* Section 36(g)(3)(B) reference. *Guinto* held that the absence of

4     the principal place of business phrase in Section 1348 did not prevent applying the test because it

5     only refers to "locat[ion]" and not the "main office." *Guinto,* 2011 U.S. Dist. LEXIS 114986,

6     *11, n. 13. However, "main office" is referenced in conjunction with the term "located" in

7     Section 36(g)(3)(B). *Id.; see Schmidt,* 546 U.S. at 307, n.1.

8         If Section 36(g)(3)(B) had a predecessor in 1943, *American Surety* would not have

9     concluded that there was nothing "defining 'located.'" *American Surety,* 133 F.2d at 161.

10     *American Surety's* premise to look to corporations for an "analogy" on citizenship (*Id.* at 162)

11     was superseded by statute in 1994. *See Schmidt,* 546 U.S. at 307, n.1. Accordingly, in addition

12     to being abrogated by *Schmidt, American Surety* was also superseded by statute. *See* 12 U.S.C.

13     § 36(g)(3)(B).

14         iv.     **Even in 1943, American Surety Was Wrong To Apply The Principal**

15                  **Place of Business Test to a Corporation.**

16         According to the Supreme Court, applying the principal place of business test to

17     corporations was erroneous. *The Hertz Corp., v. Friend*, 130 S. Ct. 1181 (2010). The *Hertz*

18     Supreme Court concluded that: "[b]y 1928 this Court made clear that the 'state of incorporation'

19     rule was virtually absolute." *Id.* at 1188 (citing *Black and White*, 276 U.S. 518, 522-525 (1928)

20     as "refusing to question corporation's reincorporation motives . . . .").

21         The Supreme Court analyzed, in detail, the historical origins of the principal place of

22     business test for citizenship. *Hertz*, 130 S. Ct. at 1187–90. That analysis showed that the courts

23     formulated only the "state of incorporation" test for corporations (*Id.* at 1187–88.) and that, after

24     several failed legislative attempts between 1928 and 1957, Congress created, purely by statute,

25     the principal place of business test for citizenship: "in 1958, Congress both codified the courts'

26     traditional place of incorporation test and also enacted into law . . . [the] 'principal place of

27     business' language." *Id.* at 1190; 28 U.S.C. § 1332 at Notes to 1958 amendment ("added <u>new</u>

28     subsecs. (b) and (<u>c</u>)"). In other words, the principal place of business test had no common law

1   precursor.

2        While *Hertz* does go on to discuss the earliest meanings of the "principal place of

3   business" phrase in the <u>bankruptcy</u> context (*Id.* at 1190), those cases necessarily dealt with

4   <u>venue</u>—not jurisdiction.  The Constitution gives federal courts original and exclusive jurisdiction

5   over bankruptcy.  Const. Art. III § 2, and Art. I § 8 ("Congress shall have the Power [¶] To

6   establish . . . uniform Laws on the subject of Bankruptcies throughout the United States"); *see*

7   *also,* 28 U.S.C. § 1334 ("district courts shall have original and exclusive jurisdiction of all cases

8   under Title 11").  The principal place of business concept for bankruptcy remains in the venue

9   section.  28 U.S.C. § 1408 ("Venue of Cases Under Title 11.  . . . district court for the district

10  (1) in which . . . principal place of business in the United States, or principal assets in the United

11  States . . . .).

12       The 1958 origins of principal place of business for jurisdiction had also been confirmed

13  separately in *Schmidt*:  "A business organized as a corporation, for diversity jurisdiction

14  purposes, is 'deemed to be a citizen of any State by which it has been incorporated' <u>and, since</u>

15  <u>1958, also</u> 'of the State where it has its principal place of business.' § 1332(c)(1)."  *Schmidt*,

16  546 U.S. at 306 (emphasis added).

17       The cases *American Surety* relied on to utilize the principal place of business test,

18  actually hold that a corporation's state of incorporation was the proper test for citizenship, even

19  if that corporation was later authorized to do business in a second state and conferred the title of

20  a "domestic corporation" under state law.  *See St. Louis & San Francisco Ry. Co. v. James,* 161

21  U.S. 545, 564-565 (1896) and *Southern Ry. Co. v. Allison,* 190 U.S. 326, 337 (1903).  *American*

22  *Surety*'s application of the principal place of business test is <u>irreconcilable</u> with the Supreme

23  Court's analysis in *Hertz* (and *Schmidt*) and should be disregarded.

24       Unfortunately, *Guinto* relied on *American Surety,* stating "[t]he Court is aware of

25  [WMR] . . . reasoning directly from the language and history of Section 1348, [it] found that it

26  does not permit the use of the 'principal place of business' as the 'location' of a national bank.

27  That reasoning is precluded in the Ninth Circuit by *American Surety*."  *Guinto,* 2011 U.S. Dist.

28  LEXIS at *12-13, n.15.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    *WMR* correctly reasoned that the principal place of business test for citizenship did not

2    occur until 1958, ten years after Section 1348 was enacted.  As detailed above, *American Surety*

3    was wrong to apply the principal place of business test; and *Guinto*'s reliance thereon was also in

4    error.  Finally, the *Hertz* and *Schmidt* Supreme Court confirmed *American Surety*'s erroneous

5    application of the principal place of business test.  *Hertz*, 130 S. Ct. at 1187–88; *American*

6    *Surety,* 133 F.2d at 161–62.

7          **v.      American Surety's Holding Regarding The Principal Place of**

8                    **Business Test Is Not Controlling.**

9          *American Surety* merely assumed that the principal place of business test was the correct

10   standard because it was not aware of any (1943) definition of "located" and erroneously used the

11   principal place of business test by analogy.  *Id.* at 161–62 ("No case defining "located," in this

12   connection, has come to our attention. . . .  There would appear to be a close **analogy** between

13   such a bank and a corporation national in scope.").  It did so in order to review the subrogation

14   issue on which the trial court's decision turned.  *Id.* at 162–64.

15         The Ninth Circuit held that federal law applies in diversity actions, but in 1974, it

16   previously assumed that state law applied.  *Canada Life Assur. Co., v. LaPeter*, 563 F.3d 837,

17   843 (9th Cir. 2009).  The Court held:

18                 To the extent we have previously applied state law, we did so
                   without deciding whether state or federal law controlled.  Thus,
19                 those decisions are **not controlling**.  *Estate of Bishop v. Bechtel
                   Power Corp.*, 905 F.2d 1272, 1275-76 (9th Cir. 1990) (court not
20                 bound by prior cases in which the question was assumed without
                   decision). . . . *Prudential Ins. Co. of Am. v. Fifty Assoc.*, 503 F.2d
21                 925, 930 (9th Cir. 1974) . . . .

22   *LaPeter*, 563 F.3d 843, n. 12 (emphasis added).

23         Because *American Surety* assumed that the principal place of business was the standard

24   for a national bank's citizenship, its holding is not controlling.  Instead of adhering to prior

25   decisions, *LaPeter* chose to follow more recent and reasoned decisions from other Circuits.  *Id.*

26   at 842–43.  By this logic, the recent and well-reasoned *WMR* decision should be followed.

27         **(a)      The "Mount" Decisions Are No Longer Valid.**

28         In *Mount v. Wells Fargo Bank, N.A.*, 2008 U.S. Dist. LEXIS 98193, *4 (C.D. Cal. Nov.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

93000/FR1030/00687151-2                          9                      CASE NO.:
                                                                       NOTICE OF REMOVAL

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   24, 2008, Feess, J.), a California Central District Court held that Wells Fargo is a citizen of

2   California because its principal place of business is located there. *See also, Saberi v. Wells*

3   *Fargo Home Mortgage*, 2011 U.S. Dist. LEXIS 5286, *7-8 (S.D. Cal. Jan. 20, 2011) (following

4   *Mount's* principal place of business test).  However, the *Mount* Court re-examined Wells Fargo's

5   citizenship in *Kasramehr* and "conclude[d] that under [28 U.S.C.] § 1348, a national banking

6   association is a citizen of the state of its main office as designated in its articles of association,

7   and not also a citizen of the state of its principal place of business.  Thus, Wells Fargo is a citizen

8   of South Dakota." *Kasramehr v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 52930, *6

9   (C.D. Cal. May 17, 2011, Feess, J.).  The *Kasramehr* Court explained that the principal place of

10   business provision in 28 U.S.C. § 1332(c)(1), applicable to state-chartered corporations, did not

11   come into existence until ten (10) years after Section 1348 was enacted, applicable to national

12   banking associations, and that if "Congress had intended for national banks likewise to be

13   deemed citizens of the states of their principal places of business, it likely would have similarly

14   amended *§ 1348* to contain a reference to national banks' 'principal places of businesses.'  Its

15   failure to do so suggests that Congress did not intend for a national bank to be deemed a citizen

16   of the state of its principal place of business." *Id.* at *5-6 (emphasis added).  Therefore,

17   *Kasramehr* effectively vacated the *Mount* decision and by implication, all decisions following

18   *Mount*, such as *Saberi*, *Gutterman v. Wachovia Mortgage*, 2011 U.S. Dist. LEXIS 74521 (C.D.

19   Cal. Mar. 31, 2011), *Goodman v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 63165 (C.D.

20   Cal. June 1, 2011), *Naumoff v. Wells Fargo Bank, N.A.,* 2011 U.S. Dist. LEXIS 128045 (C.D.

21   Cal. Nov. 2, 2011), and *Stewart v. Wachovia Mortgage*, 2011 U.S. Dist. LEXIS 85822 (C.D. Cal.

22   Aug. 2, 2011); *see also, McNeely v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 126970, at

23   *9 (C.D. Cal. Nov. 1, 2011) (recognizing *Mount's* reversal and finding only South Dakota

24   citizenship).

25          Just as Judge Feess reversed himself in *Mount*, the *Stewart* court recently changed its

26   position in *Mireles v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 3871 (C.D. Cal. 2012).

27   "Recognizing Congress's intent to create parity, the *Excelsior* court noted that at the time § 1348

28   was enacted, a state bank was only a citizen of a single state: the state in which was incorporated.

1  [citation]. As a result, <u>jurisdictional parity at the time the statute was passed was achieved by</u>

2  <u>limiting a national bank's citizenship to a single location</u>." *Mireles*, 2012 U.S. Dist. LEXIS at *6

3  (emphasis added).

4      The *Stewart* court held that it would not be appropriate to depart from a historical

5  construction of Section 1348, enacted in 1948. "[O]ne can only speculate as to what Congress'

6  intent would have been had it known that the citizenship of state banks would be changed

7  decades in the future." *Id.* at *6-8.

8      Besides *Kasramehr* and *Mireles*, numerous other unpublished California district courts

9  have recently held that Wells Fargo is strictly a citizen of South Dakota. *See e.g., Tse v. Wells*

10  *Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 6796, *8 (N.D. Cal. Jan. 19, 2011) ("Wells Fargo is a

11  citizen of South Dakota;" denying motion to remand); *Atienza v. Wells Fargo Bank, N.A.*, 2011

12  U.S. Dist. LEXIS 1738, *6 (N.D. Cal. Jan. 4, 2011) ("Thus, Wells Fargo is a citizen of South

13  Dakota for purposes of diversity jurisdiction."); *Giordano v. Wachovia Mortgage, FSB*, 2010

14  U.S. Dist. LEXIS 136284, *5 (N.D. Cal. Dec. 14, 2010) (finding Wells Fargo is a citizen of

15  South Dakota; denying motion for remand): *Silva v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist.

16  LEXIS 64636, *6 (C.D. Cal. June 16, 2011) ("Wells Fargo's main office is in South Dakota.

17  [Citation.] It is accordingly, a citizen of South Dakota."); *Albarran v. Wells Fargo Bank, N.A.*,

18  2011 U.S. Dist. LEXIS 59635, *4 (C.D. Cal. May 26, 2011) ("Wells Fargo is a citizen of South

19  Dakota because Wells Fargo's main office, as set forth in its articles of association, is located in

20  Sioux Falls, South Dakota."); *Taguinod v. World Sav. Bank, FSB*, 2010 U.S. Dist. LEXIS

21  140509, *4 (C.D. Cal. Dec. 2, 2010) (Wells Fargo is deemed to be a citizen of South Dakota.);

22  *Cochran v. Wachovia Bank, N.A.*, 2010 U.S. Dist. LEXIS 38379, *3 (C.D. Cal. Mar. 9, 2010);

23  *Marzette v. Provident Sav. Bank, FSB*, 2011 U.S. Dist. LEXIS 130657, * 3-4 (E.D. Cal. 2011);

24  *Heard-Rodriguez v. World Savings Bank, FSB*, 2012 U.S. Dist. LEXIS 43529, * 4-5 (C.D. Cal.

25  Mar. 28, 2012); *Forsythe v. Wells Fargo Bank, N.A.*, No. CV 12-00139, 2012 U.S. Dist. LEXIS

26  44031, *5 (C.D. Cal. Mar. 28, 2012) ("As the Supreme Court has noted, section 1348 governs

27  national banks and section 1332(c)(1) governs corporations.").

28  / / /

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

CASE NO.:
NOTICE OF REMOVAL

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

3.     **AMOUNT IN CONTROVERSY.**

Plaintiff brings this lawsuit against Wells Fargo, claiming that it failed to automatically deduct her mortgage payments from her new bank account which resulted in plaintiff falling into default. (Comp. ¶¶ 7-11).  After realizing that she was five months past due, plaintiff applied for a loan modification. (Comp. ¶¶ 10-13).  From 2009 through 2013, plaintiff was under review for a loan modification, yet she was recently denied a modification due to her income level. (e.g., Comp. ¶¶ 13, 29-40, 44-46).  Plaintiff challenges this modification denial and seeks both damages (e.g., Prayer for Relief ¶¶ 1, 3) and an injunction against a trustee's sale. (Comp. ¶¶ 63-64, Prayer ¶ 2).

Generally, "[t]he amount in controversy is determined from the allegations or prayer of the complaint."  Schwarzer et al., Fed. Civ. Pro. Before Trial, ¶ 2:450 (2009) (citing *St. Paul Mercury Indem. Co., v. Red Cab Co.*, 303 U.S. 283, 289 (1938), which held that an inability to recover an amount adequate to give the court jurisdiction does not oust the court of jurisdiction).

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977) (superseded by statute on other grounds as stated in *United Food & Commer. Workers Union Local 751 v. Brown Group*, 517 U.S. 544, 557 (1996)).  "If the primary purpose of a lawsuit is to enjoin a bank from selling or transferring property, then the property is the object of the litigation." *Reyes v. Wells Fargo Bank, N.A.*, 2010 U.S. Dist. LEXIS 113821, *12-13 (N.D. Cal. June 29, 2010).

The subject of this action is a $492,800 home loan that plaintiff obtained from Wells Fargo's predecessor (World Savings Bank, FSB) on December 19, 2000. (*See* Exhibit F, Deed of Trust).  Plaintiff fell into default and now challenges the non-judicial foreclosure process, seeking unspecified monetary damages and injunctive relief.  (e.g.,  Prayer ¶¶ 1-3).  In other words, should plaintiff prevail in this action, she would retain title to the subject property and enjoin Wells Fargo from taking any action under its secured interest in the property -- which would result in a loss of, at a minimum, the original principal loan amount.  Accordingly, the amount in controversy greatly exceeds the $75,000 threshold.

**4.**     **INTRA-DISTRICT ASSIGNMENT.**

This case is being removed to the Northern District – San Jose Division of this Court, since the existing state court case is pending in Santa Clara County Superior Court.

**5.**     **TIMELINESS.**

This Notice is timely, pursuant to 28 U.S.C. § 1446(b) because Wells Fargo has not been served with process. Accordingly, pursuant to FRCP 81(c), Wells Fargo's responsive pleadings are not due until twenty-one (21) days following removal. Furthermore, a review of the Santa Clara County Superior Court's Register of Actions does not confirm any filed proof of service regarding service of process. Wells Fargo has not appeared in the State Court Action.

As there are no other named defendants in this action, and no doe defendants are known or have been served, no joinder of unserved defendants is required to perfect removal of the State Court Action. *Salveson v. Western States Bankcard Ass'n*, 730 F.2d 1423, 1429 (9th Cir. 1984).

**6.**     **OTHER PERTINENT INFORMATION.**

A.     Pursuant to 28 U.S.C. § 1446(a), Wells Fargo files this notice in the District Court of the United States for the district and division within which the State Court Action is pending.

B.     Pursuant to 28 U.S.C. § 1446(d), a copy of this notice with its attachments will promptly be served on plaintiff in the State Court Action, and notice thereof will be filed with the clerk of the Santa Clara County Superior Court.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1    WHEREFORE, Wells Fargo hereby removes Santa Clara County Superior Court Case

2  No. 113-CV-248665 to the United States District Court for the Northern District of California –

3  San Jose division.

4

5                                    Respectfully submitted,

6  Dated:  July 18, 2013            ANGLIN, FLEWELLING, RASMUSSEN,
                                    CAMPBELL & TRYTTEN LLP
7

8                            By:  _____
                                    Michael Rapkine
9                                    mrapkine@afrct.com
                                 Attorneys for Defendant
10                                WELLS FARGO BANK, N.A.
                                 ("Wells Fargo")
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

EXHIBIT A

THE MLNARIK LAW GROUP, INC.
JOHN L. MLNARIK (SBN: 257882)
JAMES J. STEINLE (SBN: 237291)
CAROLINE M. REEBS (SBN: 282915)
JAMES T. ERICKSON (SBN: 235630)
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone: (408) 919-0088
Facsimile: (408) 919-0188

Attorneys for Plaintiff
ELIZABETH WILLIAMS



FILED
JUN 27 2013
DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara
By_____ Deputy
Gagliardi

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SANTA CLARA

| | |
|---|---|
| ELIZABETH ANN WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A., a national bank; and DOES 1 to 20, inclusive,<br><br>Defendant. | Case No.: 113CV248665<br><br>VERIFIED COMPLAINT FOR:<br>1) VIOLATION OF UNFAIR COMPETITION LAW ("UCL"), CAL. BUS. & PROF. CODE §§ 17200 ET SEQ.;<br>2) BREACH OF CONTRACT/IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;<br>3) FOR INJUNCTIVE AND DECLARATORY RELIEF. |

Plaintiff ELIZABETH ANN WILLIAMS ("Plaintiff") alleges:

### I.   PARTIES

At all times mentioned herein Elizabeth Ann Williams is an individual who purchased the property known as 2490 Scarlett Road, Gilroy, CA 95020 ("Property" or "the Subject Property").

At all times mentioned herein, Plaintiff was and is the title owner and legal occupant of that Property.

Upon information and belief, Defendant Wells Fargo, N.A. (hereinafter "Wells" or "Wells Fargo" or "Defendant") was a corporation doing business in the State of California.

Plaintiff is ignorant of the true names and capacities of Defendant sued as Does 1-20, inclusive, and therefore sue these Defendant by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

COMPLAINT

FILED BY FAX

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Minarik Law Group, Inc.

2930 Bowers Avenue
Santa Clara CA 95051
Telephone (408) 919-0088 Facsimile (408) 919-0188

Plaintiff is informed and believes, and based on information and belief, alleges that at all times mentioned in this complaint Defendant were agents, servants, partners and/or employees of co-Defendant, and in doing the actions mentioned below were, unless otherwise alleged, within the course and scope of their authority as such agent, servant, partner, and/or employee with the permission and consent of co-Defendant.

Any allegations about acts of any corporate or other business Defendant means that the corporation or other business did the acts alleged through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

Plaintiff believes and is informed and on that basis alleges that each of said Defendant, were in some manner legally responsible for the unlawful actions, unlawful policies and unlawful practices complained of herein. Plaintiff will amend this Complaint to set forth the true names and capacities of said Defendant, along with the appropriate charging allegations when the same has been ascertained.

Venue and jurisdiction are proper in this court because injury and damage to Plaintiff occurred in its jurisdictional area, the property is located in this jurisdictional area, and the unlawful practices were committed in this jurisdictional area.

Although various servicers have been involved in Plaintiff's mortgage and home loan obligations, at all times the debt was due to lender World Savings Bank and its successors, Wachovia and Defendant, which purchased Wachovia. Below, factual references to Defendant will also include actions taken by Defendant's agents (the servicers) and Defendant's predecessors (World Savings Bank, Wachovia); legal charges, however, are restricted below to Wells Fargo Bank itself.

## FACTS

1. Plaintiff obtained a first mortgage from the Defendant, formerly World Savings Bank, on or around December 2000.

2. Plaintiff later obtained a second mortgage from the Defendant; Plaintiff obtained a HELOC on Sept. 15, 2008. The HELOC was mistakenly foreclosed upon, a mistake corrected

COMPLAINT

2

when (as described below) the lender realized Plaintiff offered to bring the loan current. However, the mix-up with the second loan caused Defendant to believe the first loan had been extinguished, and thus Defendant later refused to accept payments on this "non-existent" loan, leading to unjustifiable default and late fees and Plaintiff's eventual last-resort request for a loan modification.

3.      From December 2000 until approximately May 2007 Plaintiff had always paid both of her mortgages on time via automatic bank withdrawals.

4.      On or around April or May 2007, her vehicle was stolen. Because her vehicle contained numerous financial records and documents, Plaintiff was concerned that her identity would also be stolen.

5.      Plaintiff immediately opened a new bank account.

6.      Plaintiff informed World Savings Bank that Plaintiff had a new bank account and directed them to withdraw her monthly mortgage payments from the new bank account.

7.      The Defendant failed to properly update their system with the new bank account information for the second deed of trust.

8.      Plaintiff noticed that the Defendant had not withdrawn the mortgage payments from her bank account.

9.      When Plaintiff called the Defendant to identify how to make her mortgage payments, she was told they did not have any record of her account number or loan.

10.      On or around February 2009 she was sent a statement indicating that she was five months past due.

11.      She called the Defendant to explain that she was in default because they failed to properly draft her funds to the correct account.

12.      She also asked the Defendant for a loan modification application.

13.      She sent in her first loan modification application in or around March 2009.

14.      After several months elapsed, the Defendant requested that Plaintiff pay late fees due to the failed withdrawals.

15.      The Defendant also initiated foreclosure proceedings.

16.      Initially Plaintiff refused to pay the late fees because the failure to properly withdraw

The Minarik Law Group, Inc.
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone (408) 919-0088 Facsimile (408) 919-0188

EXHIBIT A to Notice of Removal
Page No. 17

the funds was not her error, it was the Defendant's error.

17.     After numerous months of attempting to challenge the Defendant's imposition of the late fees, Plaintiff decided to acquiesce.  Plaintiff attempted to contact the Defendant to inform them that Plaintiff was willing to pay any and all late fees and arrears.

18.     Plaintiff attempted to contact the Defendant to inform them that Plaintiff was willing to pay any and all late fees and arrears.

19.     Despite numerous phone calls and emails Plaintiff did not get a response from the Defendant regarding her attempt to reinstate her loan.

20.     Plaintiff also sought the assistance of an attorney who helped her communicate with the Defendant.

21.     Together with her attorney, they contacted the Defendant, who informed them that Defendant never received her request for a reinstatement quote.

22.     Interestingly, the Defendant acknowledged the receipt of her emails.  It was only when her attorney asked them to read her emails out loud, that they verbally acknowledge that Plaintiff had in fact requested a reinstatement figure.

23.     Following the Defendant's admission that Plaintiff had sent them an email requesting a reinstatement figure, her attorney also sent the Defendant a letter requesting a reinstatement amount and stating that Plaintiff was willing and able to pay the reinstatement figure with certified funds.

24.     On or around September 15, 2007 the Defendant began foreclosure.  On or around October 2007 Plaintiff was served with eviction and foreclosure notices.

25.     On or around September 30, 2007 the Defendant withdrew payment for the first mortgage.

26.     In October 2007  the Defendant did not withdraw the funds. They did not withdraw the funds because they said they had no record of her loan in their system; they said her loan did not exist.

27.     Plaintiff never received any communication from the Defendant informing her that her loan no longer existed; Plaintiff even went to a local branch to follow-up with the Defendant

COMPLAINT

4

The Mnarik Law Group, Inc.
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone (408) 919-0088 Facsimile (408) 919-0188

and was again told that her loan didn't exist.

28.     On or around March 2008, Plaintiff finally got a written notice from the Defendant; the notice requested a substantial amount of funds to cure her so-called "default," which Plaintiff refused to pay.

29.     On or around April 2008 Plaintiff began investigating loan modification alternatives.

30.     The first representative Plaintiff spoke to was named Jason, who was an employee of Wells Fargo Bank. When Plaintiff first began the loan modification discussions with Jason, Plaintiff was only five months behind in making her mortgage payments -- due to Wachovia's failure to draft from her account.

31.     After numerous months of communications with Jason, Plaintiff was transferred to a representative named Christine Charles, of Wachovia. Plaintiff also engaged in numerous correspondences with Christine.

32.     After Christine Charles, Plaintiff was switched to Cody Tucker of Wachovia in or around 2011; Plaintiff faxed Cody Tucker hundreds of pages in or around April/May 2011 to again attempt a loan modification.

33.     After Cody Tucker, Plaintiff was transferred to Marissa Morales on or around June 2011.

34.     Throughout this time her arrears had been accumulating.

35.     Then Crystal Martinez (a representative of Wells Fargo) finally told her that the reason why she had to stop talking to her was because she had too many rental properties and was not eligible.

36.     Plaintiff was denied by Crystal Martinez; and so contacted the supervisor.

37.     The supervisor said that Crystal Martinez's information was incorrect.

38.     Plaintiff told her she wanted a new representative to work with.

39.     She was told that to get a new rep she would have to re-apply all over again.

40.     In or around May 2013, she was assigned to Anna-Maria Tenagos, to whom (as so often before) she sent everything necessary.

41.     Anna-Maria Tenagos told her exactly what she wanted and Plaintiff complied.

The Minarik Law Group, Inc.
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone (408) 919-0088 Facsimile (408) 919-0188

The Mlnarik Law Group, Inc.
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone (408) 919-0088 Facsimile (408) 919-0188

42.     Anna-Maria Tenagos started to work on her file and then foreclosure started in May 2013.

43.     Anna-Maria Tenagos submitted the information to the foreclosure department to have the sale postponed.

44.     Plaintiff was denied for her application; but Plaintiff got an extension until July 1, 2013.

45.     Plaintiff gave Anna-Maria Tenagos everything she requested.

46.     Plaintiff got a call from Defendant last week.  Defendant said that Plaintiff can't get a loan modification because her income is too high -- because they "can't even put it in the computer."

47.     Plaintiff called back and tried to speak to someone else.

48.     Defendant said that gross income equals rent minus mortgages, which would leave only 8% of income towards mortgage payments.

49.     Plaintiff explained that this was incorrect: relative to net income it's over 30%. Plaintiff told Defendant they need to look at materials and labor and utilities that Plaintiff has to pay; Defendant was not looking at the correct income, and should have looked at net not gross.

50.     Defendant wouldn't look beyond the gross figure.

51.     Thus Plaintiff is still barred through no fault of her own from even being considered for a loan modification -- and now faces foreclosure.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

**Violation of Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.**

52.     Plaintiff repeats and re-alleges each and every allegation set forth in all paragraphs above as if fully set forth herein.

53.     Defendant's acts and practices as described herein constitute unlawful, fraudulent, and unfair business acts and practices, in that (a) the justification for Defendant's conduct is outweighed by the gravity of the consequences to Plaintiff; and/or (b) Defendant's conduct is immoral, unethical, oppressive, unscrupulous, unconscionable, or substantially injurious to

EXHIBIT A to Notice of Removal
Page No. 20

Plaintiff; and/or (c) the uniform conduct of Defendant has a tendency to deceive Plaintiff.

54.     Defendant's conduct is unfair because it was entirely Defendant's fault that the initial five payments were missed when Defendant neglected to draw from Plaintiff's bank account. Plaintiff contacted Defendant and notified them of their error but nevertheless Defendant initiated foreclosure.

55.     Defendant's conduct is unfair because it offends legislative policy with regard to the use of deceptive, misleading, unfair and unconscionable means in the collection of debts and further offends California's legislative policy set forth in Cal. Civil Code § 2923.5, which requires that the mortgagee contact the borrower prior to filing a notice of default in order to "explore options for the borrower to avoid foreclosure." This policy clearly requires bona fide efforts to assist borrowers to avoid foreclosure and is violated by Defendant' false, deceptive, misleading, unfair, and unconscionable behavior. Moreover, Defendant blatantly "dual tracked" Plaintiff by supposedly working toward a loan modification in May while also preparing to foreclose, in violation of the California Homeowners' Bill of Rights (CCP section 2924 et seq.). Thus the unfair behavior clearly offended established public policy and was immoral, unethical, oppressive, unscrupulous, and substantially injurious.

56.     The unfair and deceptive acts and practices of Defendant have directly, foreseeably, and proximately caused or will cause damages and injury to Plaintiff. The acts were unfair because they had a devastating impact on Plaintiff and were not even remotely justifiable by any legitimate reason, justification, or motives of defendant.

57.     The actions and failures to act of Defendant, and the above described course of fraudulent conduct and fraudulent concealment, constitute acts, uses, or employment by Defendant of unconscionable commercial practices, deception, fraud, false pretenses, misrepresentations, and the knowing concealment, suppression or omission of material facts with the intent that others rely upon such concealment, suppression, or omission of material facts in connection with the sale and or/leasing of merchandise of Defendant in violation of the consumer protection statutes listed above.

58.     Plaintiff has suffered injury in fact and has lost money or property as a result of the

The Minarik Law Group, Inc.
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone (408) 919-0088 Facsimile (408) 919-0188

EXHIBIT A to Notice of Removal
Page No. 21

conduct described herein. Plaintiff was induced by Defendant' unlawful, fraudulent, and unfair conduct to make payments to Defendant totaling thousands of dollars which they would not has made, and which could not lawfully has been collected from them after foreclosure.

## II. SECOND CLAIM FOR RELIEF

### BREACH OF CONTRACT/

### IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

59.    Plaintiff hereby realleges each of the preceding paragraphs of this Complaint as though fully set forth at length hereat.

60.    In Plaintiff's contract with Defendant there is an implied promise of good faith and fair dealing. Defendant has unfairly interfered with plaintiff's right to receive the benefits of the contract, even though plaintiff did all, or substantially all of the significant things that the contract required her to do except when she was excused from having to do those things. All conditions required for Defendant's performance had occurred or were excused. Plaintiff was harmed by Defendant's conduct.

61.    Every step of the way Plaintiff has done everything she was supposed to do. She set up a bank account from which Defendant could withdraw her monthly mortgage. Defendant failed to draw from the correct bank account even after being notified of their mistake. Plaintiff spent years attempting to straighten the situation out -- and spoke at length at least five separate reopresentative of Defendant, as described above. Ultimately she agreed to attempt to get a loan modification to correct Defendant's mistakes. Defendant used the wrong standards to gauge plaintiff's income -- ignoring guidelines set forth by the U.S. Treasury Department -- and thus made it impossible for plaintiff to even get put into the system for a loan modification.

## III. THIRD CLAIM FOR RELIEF

### INJUNCTIVE RELIEF RE: TRUSTEE FORECLOSURE SALE

62.    Plaintiffs hereby realleges each of the preceding paragraphs of this Complaint as though fully set forth at length hereat.

63.    Defendant intend to sell, and unless restrained will sell or cause to be sold, the subject property, all to plaintiffs' great and irreparable injury in that Defendant has given notice that

The Mharik Law Group, Inc.
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone (408) 919-0088 Facsimile (408) 919-0188

EXHIBIT A to Notice of Removal
Page No. 22

the trustee sale of the property will take place on a certain date and time, and at a certain address, and if the sale takes place as scheduled, plaintiffs, having no right to redeem the subject property from the sale, will forfeit all rights in it before their claims can be fully tried by this court.

64.     The scheduled sale is wrongful and should be enjoined by virtue of the facts alleged in this complaint. Plaintiffs has no other plain, speedy, or adequate remedy, and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to plaintiffs' interests.

**WHEREFORE**, Plaintiff prays for relief, as follows:

1. For monetary damages in an amount subject to proof.

2. That the Court issue a temporary restraining order and a preliminary injunction restraining Defendant and their agents, attorneys, successors, and representatives, and all persons acting in concert or participating with them, from selling, attempting to sell, or causing to be sold The Premises either under the power of sale in the deed of trust or by foreclosure action.

3. That plaintiffs recover their attorney fees and costs incurred in this action, and that the Court award all other appropriate relief.

DATED: June 27, 2013

THE MLNARIK LAW GROUP, INC.

JIM ERICKSON
Attorney(s) for Plaintiff

COMPLAINT

9

EXHIBIT B

# SUMMONS
## (CITACION JUDICIAL)



**SUM-100**

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*
(ENDORSED)

**F I L E D**

JUN 27 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara
By _____ Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Wells Fargo Bank, N.A. a national bank

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Elizabeth Ann Williams

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso):* **113CV248665** |
|---|---|

191 N. First Street
San Jose, CA 95113

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Jim Erickson, The Mlnarik Law Group, Inc., 2930 Bowers Ave., Santa Clara, CA 95051     408-919-0088

| DATE: **JUN 2 7 2013** *(Fecha)* | DAVID H. YAMASAKI Chief Executive Officer/Clerk *(Secretario)* | Clerk, by **T. Gagliardi** | , Deputy *(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* Wells Fargo, N.A.

   under: ☑ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)

   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):* 7/2/13

*Page 1 of 1*

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465. www.courtinfo.ca.gov |
|---|---|---|

**EXHIBIT B to Notice of Removal**
**Page No. 24**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| The Minarik Law Group, Inc.<br>Jim Erickson (SBN 235630)<br>2930 Bowers Ave.<br>Santa Clara, CA 95051<br>TELEPHONE NO.: 408-919-0088    FAX NO.: 408-919-0188<br>ATTORNEY FOR *(Name):* Elizabeth Williams | **(ENDORSED)**<br>**F I L E D**<br><br>JUN 27 2013<br><br>DAVID H. YAMASAKI<br>Chief Executive Officer/Clerk<br>Superior Court of CA, County of Santa Clara<br>By_____Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Santa Clara
STREET ADDRESS: 191 N. First Street
MAILING ADDRESS: Same
CITY AND ZIP CODE: San Jose, CA 95113
BRANCH NAME: Civil

CASE NAME:
Williams v. Wells Fargo N.A.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: 1 1 3 C V 2 4 8 2 6 5 |
|---|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22)<br>☐ Uninsured motorist (46) | ☐ Breach of contract/warranty (06)<br>☐ Rule 3.740 collections (09)<br>☐ Other collections (09)<br>☐ Insurance coverage (18)<br>☐ Other contract (37) | ☐ Antitrust/Trade regulation (03)<br>☐ Construction defect (10)<br>☐ Mass tort (40)<br>☐ Securities litigation (28)<br>☐ Environmental/Toxic tort (30) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**<br>☐ Asbestos (04)<br>☐ Product liability (24)<br>☐ Medical malpractice (45)<br>☐ Other PI/PD/WD (23) | **Real Property**<br>☐ Eminent domain/Inverse<br>condemnation (14)<br>☐ Wrongful eviction (33)<br>☐ Other real property (26) | ☐ Insurance coverage claims arising from the<br>above listed provisionally complex case<br>types (41)<br>**Enforcement of Judgment**<br>☐ Enforcement of judgment (20) |
| **Non-PI/PD/WD (Other) Tort**<br>☐ Business tort/unfair business practice (07)<br>☐ Civil rights (08)<br>☐ Defamation (13)<br>☐ Fraud (16)<br>☐ Intellectual property (19)<br>☐ Professional negligence (25)<br>☐ Other non-PI/PD/WD tort (35) | **Unlawful Detainer**<br>☐ Commercial (31)<br>☐ Residential (32)<br>☐ Drugs (38)<br>**Judicial Review**<br>☐ Asset forfeiture (05)<br>☐ Petition re: arbitration award (11) | **Miscellaneous Civil Complaint**<br>☐ RICO (27)<br>☐ Other complaint *(not specified above)* (42)<br>**Miscellaneous Civil Petition**<br>☐ Partnership and corporate governance (21)<br>☑ Other petition *(not specified above)* (43) |
| **Employment**<br>☐ Wrongful termination (36)<br>☐ Other employment (15) | ☐ Writ of mandate (02)<br>☐ Other judicial review (39) | |

2. This case ☐ is  ☑ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties       d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel   e. ☐ Coordination with related actions pending in one or more courts
        issues that will be time-consuming to resolve              in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence        f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action *(specify):* 3
5. This case ☐ is  ☑ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 6/27/2013

Jim Erickson
_____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

FILED BY FAX

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
   Medical Malpractice– Physicians & Surgeons
   Other Professional Health Care Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip and fall)
   Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
   Intentional Infliction of Emotional Distress
   Negligent Infliction of Emotional Distress
   Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
   Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
   Negligent Breach of Contract/ Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court Case Matter
   Writ–Other Limited Court Case Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of County)
   Confession of Judgment *(non-domestic relations)*
   Sister State Judgment
   Administrative Agency Award *(not unpaid taxes)*
   Petition/Certification of Entry of Judgment on Unpaid Taxes
   Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
   Declaratory Relief Only
   Injunctive Relief Only *(non-harassment)*
   Mechanics Lien
   Other Commercial Complaint Case *(non-tort/non-complex)*
   Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late Claim
   Other Civil Petition

**CIVIL CASE COVER SHEET**

Page 2 of 2

**EXHIBIT B to Notice of Removal**
**Page No. 26**

THE MLNARIK LAW GROUP, INC.
JOHN L. MLNARIK (SBN: 257882)
JAMES J. STEINLE (SBN: 237291)
CAROLINE REEBS (SBN: 282915)
JAMES T. ERICKSON (SBN: 235630)
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone: (408) 919-0088
Facsimile: (408) 919-0188

Attorneys for Plaintiffs
ELIZABETH ANN WILLIAMS

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SANTA CLARA

| ELIZABETH ANN WILLIAMS, | Case No.: 113CV248665 |
|---|---|
| Plaintiff, | |
| v. | DECLARATION OF ELIZABETH ANN WILLIAMS IN SUPPORT OF VERIFIED COMPLAINT FOR: |
| WELLS FARGO BANK, N.A., a national bank for itself and d/b/a WELLS FARGO HOME MORTGAGE, a division of Wells Fargo Bank, N.A.; and DOES 1 to 20, inclusive, | 1) VIOLATION OF UNFAIR COMPETITION LAW ("UCL"), CAL. BUS. & PROF. CODE §§ 17200 ET SEQ.; 2) BREACH OF CONTRACT/IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; |
| Defendants. | 3) FOR INJUNCTIVE AND DECLARATORY RELIEF. |

I, Elizabeth Ann Williams declare:

1.      I am the plaintiff in the above-captioned matter.

2.      This Declaration is made in support of my Complaint and REQUEST FOR AN ORDER TO SHOW CAUSE: A TEMPORARY RESTRAINING ORDER RE: A PRELIMINARY INJUNCTION.

3.      I obtained a first mortgage from the Defendant, formerly World Savings Bank, on or around December 2000.

4.  .   I obtained a second mortgage from the Defendant on or around April 2006.

The Mlnarik Law Group, Inc.
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone (408) 919-0088 Facsimile (408) 919-0188

5. From December 2000 until approximately May 2007 I have always paid both of my mortgages on time via automatic bank withdrawals.

6. On or around May 2007, my vehicle was stolen. Because my vehicle contained numerous financial records and documents, I was concerned that my identity would also be stolen.

7. I immediately opened a new bank account.

8. I informed the Defendant that I had a new bank account and directed them to withdraw my monthly mortgage payments from the new bank account.

9. The Defendant properly changed the withdrawals for my first deed of trust.

10. The Defendant failed to properly update their system with the new bank account information for payments on the second deed of trust.

11. After several months elapsed, the Defendant requested that I pay late fees due to the failed withdrawals.

12. The Defendant also initiated foreclosure proceedings.

13. Initially I refused to pay the late fees because the failure to properly withdraw the funds was not my error; it was the Defendant's error.

14. After numerous months of attempting to challenge the Defendant's imposition of the late fees, I decided to acquiesce.

15. I attempted to contact the Defendant to inform them that I was willing to pay any and all late fees and accumulated arrears.

16. Despite numerous phone calls and emails, I did not get a response from the Defendant regarding my desire to reinstate the loan.

17. Despite my attempts to reinstate my loan, on or around September 15, 2008, the Defendant foreclosed my loan.

18. On or around September 2008, I was served with eviction and trustee's deed notices.

---

Declaration of Elizabeth Williams

2

EXHIBIT B to Notice of Removal
Page No. 28

The Mlnarik Law Group, Inc,
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone (408) 919-0088 Facsimile (408) 919-0188

19.   I sought the assistance of an attorney to help me communicate with the Defendant.

20.   Together with my attorney, I contacted one of the Defendant's telephone representatives, who claimed that there was no record of my request for a reinstatement quote.

21.   Interestingly, the Defendant's representative nonetheless acknowledged the receipt of my emails.

22.   It was only when my attorney asked the representative to read my emails out loud, that the representative verbally acknowledged that I had in fact submitted a request for a reinstatement quote.

23.   Following the Defendant's admission that I had sent them an email requesting a reinstatement figure, my attorney then also sent the Defendant a follow-up letter requesting a reinstatement amount.

24.   On or around September 30, 2008, the Defendant withdrew a payment for the 1st mortgage.

25.   In October 2008 the Defendant did not withdraw any funds. The Defendant did not withdraw the funds for the first deed of trust because they said they had no record of my loan in their system—they said my loan did not exist.

26.   I never received any communication from the Defendant informing me that my loan no longer existed—I even went to a local branch to follow-up with the Defendant and was again told that my loan didn't exist.

27.   On or around January 2009, Defendant submitted a reinstatement quote for the second deed of trust and stated the requirement that I submit certified funds to reinstate the loan. I promptly submitted certified funds.

The Mlnarik Law Group, Inc.
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone (408) 919-0088 Facsimile (408) 919-0188

---

Declaration of Elizabeth Williams

3

28.     On or around March 2009, I finally got a written notice from the Defendant—the notice requested a substantial amount of funds to cure my default on the first deed of trust, which I refused to pay.

29.     I tried dealing with the Defendant for several months without success.

30.     On or around October 2009 I began investigating loan modification alternatives.

31.     The first representative I spoke to was named Jason, who was an employee of Wells Fargo Financial Services.

32.     After numerous months of communications with Jason, I was transferred to a representative named Christine Charles, an employee of Wachovia. I also engaged in numerous correspondences with Christine.

33.     After Christine, I was switched to Cody Tucker of Wachovia in or around 2011—I faxed Cody hundreds of pages in or around April/May 2011 to attempt a loan modification.

34.     After Cody, I was transferred to Maritza Morales on or around June 2011.

35.     After Maritza, I was transferred to Crystal Martinez, who was an employee of Wells Fargo.

36.     After several months, hundreds of faxed documents and extensive verbal communication, Crystal told me I was not eligible to apply for a loan modification because I owned too many rental properties.

37.     I knew Crystal's reason for denying my application was incorrect, so I asked to speak to Crystal's supervisor. He never returned my calls.

38.     Eventually, another supervisor told me that my rental properties did not affect my eligibility to apply for a loan modification. I was advised to request a new representative and to re-apply for a loan modification application.

The Minarik Law Group, Inc.
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone (408) 919-0088  Facsimile (408) 919-0188

-4-

Declaration of Elizabeth Williams

41. I called Anna-Maria and she told me she submitted my information to the foreclosure department and requested that my sale date be postponed to allow sufficient time for a review of my loan modification application.

42. The foreclosure sale date was postponed to July 1, 2013.

43. After I found out that my foreclosure sale date was postponed to July 1, 2013, I also found out that my loan modification application was denied.

44. I was told that the reason my loan modification application was denied was because my income was so high that the analysts "couldn't even put [my income figures] in the computer."

45. I tried numerous times to tell Wells Fargo that they mistakenly applied my gross income in their calculation, as opposed to using my net income.

46. If Wells Fargo had applied my net income, their calculations would yield substantially different results.

47. Though my gross income is high, after deductions for materials, labor and utilities, my net income is relatively low.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 27 2013 in Santa Clara, California.

By _____

Elizabeth Williams

The Minark Law Group, Inc.
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone (408) 919-0058 Facsimile (408) 919-0188

Declaration of Elizabeth Williams

5

THE MLNARIK LAW GROUP, INC.
JAMES T. ERICKSON (SBN: 235630)
2930 Bowers Avenue
Santa Clara, CA  95051
Telephone: (408) 919-0088
Facsimile: (408) 919-0188

Attorneys for Plaintiffs
ELIZABETH WILLIAMS

FILED

2013 JUN 28   A   9:43

David H. Yamasaki, Clerk of the Superior Court
County of Santa Clara, California
By _____ Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SANTA CLARA

ELIZABETH WILLIAMS,

Plaintiff,

v.

WELLS FARGO BANK, N.A., a national bank
for itself and d/b/a WELLS FARGO HOME
MORTGAGE, a division of Wells Fargo Bank,
N.A.; and DOES 1 to 20, inclusive,

Defendants.

Case No.: 113CV248665

EX PARTE APPLICATION FOR
TEMPORARY  RESTRAINING ORDER
AND ORDER TO SHOW CAUSE
(CCP §527)

(PROPOSED) ORDER

### [PROPOSED] ORDER

Having considered the foregoing application requesting issuance of an order to show

cause why a temporary injunction should not be granted, and good cause appearing therefor,

**IT IS ORDERED THAT** the application is granted. The trustee sale of July 1, 2013,

regarding 2940 Scarlett Road, Gilroy, CA, 95020, is enjoined until at least the date of the hearing

on the Order to Show Cause, which shall be: JULY 25, 2013 @ 9a.m. in Dept 8. Plaintiff

shall provide an undertaking of $ 5000 by July 1st, 2013. Moving party

shall serve this order on all parties within five days. Opposition and Reply

will be Due Pursuant to CCP.

Date: 6/28/13                                    Peter H. Kirwan

Hon. _____
Judge of the Superior Court

(Proposed) Order re: Application for TRO/OSC

-1-

Proof of Service of this Order shall be ___ on all parties by ___ on 6/28

THE MLNARIK LAW GROUP, INC.
JOHN L. MLNARIK (SBN: 257882)
JAMES J. STEINLE (SBN: 237291)
CAROLINE M. REEBS (SBN: 282915)
JAMES T. ERICKSON (SBN: 235630)
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone: (408) 919-0088
Facsimile: (408) 919-0188

Attorneys for Plaintiff
ELIZABETH WILLIAMS

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SANTA CLARA

| | |
|---|---|
| ELIZABETH ANN WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A., a national bank; and DOES 1 to 20, inclusive,<br><br>Defendant. | **Case No.:** 113CV248665<br><br>PROOF OF SERVICE |

## PROOF OF SERVICE

I am a citizen of the United States. My business address is 2930 Bowers Avenue, Santa Clara, California 95051. I am employed in the County of Santa Clara where this service occurs. I am over the age of 18 years and not a party to the within cause.

On June 28, 2013, I served the following documents described as:

**ORDER GRANTING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER TO SHOW CAUSE**

> **BY MAIL:** I am readily familiar with my employer's normal business practice of collection and processing of correspondence for mailing. Under that practice, correspondence is deposited with the U.S. Postal Service that same day in a sealed envelope(s) with postage thereon fully prepaid at Santa Clara, California, in the ordinary course of business.

> X  **BY FAX:** I served said document(s) by transmitting via facsimile from facsimile number (408) 919-0188 to the facsimile number(s) set forth below, or as stated on the attached service list, on this date before 5:00 p.m. A statement that this document was successfully transmitted without error is hereby attached to the

EXHIBIT B to Notice of Removal
Page No. 33

**The Mlnarik Law Group, Inc.**
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone (408) 919-0088 Facsimile (408) 919-0188

1      Proof of Service.

2  on the interested party(ies) in this action addressed as follows:

3  Wells Fargo Home Mortgage, Legal Dept.     855-519-3481

4

5  NDex                             972-661-7800
    c/o Barrett Daffin Frappier Treder & Weiss
6  LLP

7      I declare under penalty of perjury under the laws of the State of California that the foregoing

8  is true and correct and that this declaration was executed on June 28, 2013, at Santa Clara,

9  California.

10

11

12                             Jim Erickson

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Minarik Law Group, Inc.
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone (408) 919-0088 Facsimile (408) 919-0188

EXHIBIT C



**Office of Thrift Supervision**                                    *Nicholas J. Dyer*
Department of the Treasury                                   *Assistant Regional Director*

Pacific Plaza, 2001 Junipero Serra Boulevard, Suite 650, Daly City, CA 94014-1976
P.O. Box 7165, San Francisco, CA 94120-7165 • Telephone: (650) 746-7025 • Fax: (650) 746-7001

November 19, 2007

John A. Stoker, Esq.
Vice President and Assistant General Counsel
Wachovia Corporation
Legal Division – NCO630
One Wachovia Center
301 South Charlotte Street
Charlotte, NC 28288

Re: World Savings Bank, FSB, Oakland, California
Notice of Amendment of Charter and Bylaws

Dear Mr. Stoker:

This is in response to your letter, dated November 8, 2007, with enclosures, which you filed with the Office of Thrift Supervision (OTS) on behalf of World Savings Bank, FSB to amend the savings bank's charter and bylaws to change its name to Wachovia Mortgage, FSB and reflect a change in the location of its home office. The new home office address is 6825 Aliante Parkway, North Las Vegas, Nevada.

The institution met the requirements of 12 C.F.R. §§ 552.4(b) and 552.5(b)(2), and the proposed amendments will be effective December 31, 2007, as set forth in the Board of Directors' resolution adopting the changes to the charter and bylaws. The filing also met the requirement of 12 C.F.R. § 545.91(b) that the savings bank notify the OTS if there is a change in the permanent address of its home office.

Please feel free to contact me at (650) 746-7025 if there are any questions.

Sincerely,

Nicholas J. Dyer
Assistant Regional Director

cc: Robert Burns, FDIC - Atlanta

**EXHIBIT C to Notice of Removal**
**Page No. 35**

EXHIBIT D



Comptroller of the Currency
Administrator of National Banks

Large Bank Licensing

November 1, 2009

Mr. James E. Hanson
Vice President
Wells Fargo Bank, National Association
90 South Seventh Street
Minneapolis, MN 55479

Re:     Application to convert Wachovia Mortgage, FSB, North Las Vegas, Nevada to a national
        bank and application to merge the converted bank with and into Wells Fargo Bank,
        National Association, Sioux Falls, South Dakota
        Application Control Numbers:  2009-ML-01-0007 and 2009-ML-02-0010

Dear Mr. Hanson:

This letter is the official certification of the Comptroller of the Currency (OCC) of the
conversion of Wachovia Mortgage FSB, North Las Vegas, Nevada to a national bank with the
name Wells Fargo Bank Southwest, National Association, effective November 1, 2009.  This is
also the official certification to merge Wells Fargo Bank Southwest, National Association with
and into Wells Fargo Bank, National Association, Sioux Falls, South Dakota, effective
November 1, 2009.

If you have questions regarding this letter, please contact me at (202) 874-5294 or by email at:
Stephen.Lybarger@occ.treas.gov .  Please reference the application control number or numbers
in any correspondence.

Sincerely,

Stephen A. Lybarger
Large Bank Licensing Lead Expert

EXHIBIT E



Comptroller of the Currency
Administrator of National Banks

Washington, DC 20219

## CERTIFIED ARTICLES OF ASSOCIATION

I, John Walsh, Acting Comptroller of the Currency, do hereby certify that the document hereto attached is a true and correct copy, as recorded in the Office of the Comptroller of the Currency, of the currently effective Articles of Association for "Wells Fargo Bank, National Association," Sioux Falls, South Dakota (Charter No. 1).



IN TESTIMONY WHEREOF, today, March 27, 2012, I have hereunto subscribed my name and caused my seal of office to be affixed to these presents at the U.S. Department of the Treasury, in the City of Washington, District of Columbia.

*John Walsh*

—————————————————————
Acting Comptroller of the Currency

ARTICLES OF ASSOCIATION
OF
WELLS FARGO BANK, NATIONAL ASSOCIATION

## ARTICLE I - NAME

The title of this Association shall be Wells Fargo Bank, National Association. The Association may also use the abbreviation Wells Fargo Bank, N.A.

## ARTICLE II - OFFICES

1. Main Office. The main office of this Association shall be in the City of Sioux Falls, County of Minnehaha, State of South Dakota. The Board of Directors shall have the power to change the location of the main office to any other place within the limits of the City of Sioux Falls, without the approval of the shareholders but subject to the approval of the Comptroller of the Currency.

2. Branch Offices. The Board of Directors shall have the power to establish or change the location of any branch or branches of this Association to any other location, without the approval of the shareholders but subject to the approval of the Comptroller of the Currency.

3. Conduct of Business. The general business of the Association shall be conducted at its main office and its branches.

## ARTICLE III - BOARD OF DIRECTORS

1. Number. The Board of Directors of this Association shall consist of not less than five nor more than twenty-five persons, the exact number to be fixed and determined from time to time by resolution of a majority of the full Board of Directors or by resolution of the shareholders at any annual or special meeting thereof.

2. Qualification. Each director, during the full term of his or her directorship, shall own a minimum of $1,000 par value of stock of this Association or an equivalent interest, as determined by the Comptroller of the Currency, in any company which has control over this Association within the meaning of Section 2 of the Bank Holding Company Act of 1956.

3. Vacancy. The Board of Directors, by the vote of a majority of the full Board, may, between annual meetings of shareholders, fill vacancies created by the death, incapacity or resignation of any director and by the vote of a majority of the full Board may also, between annual meetings of shareholders, increase the membership of the Board by not more than four members and by like vote appoint qualified persons to fill the vacancies created thereby; provided, however, that at no time shall there be more than twenty-five directors of this Association; and provided further, however, that not more than two members may be added to the Board of Directors in the event that the total number of directors last elected by shareholders was fifteen or less.

4. <u>Appointment of Officers</u>. The Board of Directors shall appoint one of its members President of this Association, who shall act as Chairman of the Board, unless the Board appoints another director to act as Chairman. In the event the Board of Directors shall appoint a President and a Chairman, the Board shall designate which person shall act as the chief executive officer of this Association. The Board of Directors shall have the power to appoint one or more Vice Presidents and to appoint a Cashier and such other officers and employees as may be required to transact the business of this Association.

5. <u>Powers</u>. The Board of Directors shall have the power to define the duties of the officers and employees of this Association; to fix the salaries to be paid to them; to dismiss them; to require bonds from them and to fix the penalty thereof; to regulate the manner in which the increase of the capital of this Association shall be made; to manage and administer the business and affairs of this Association; to make all Bylaws that it may be lawful for them to make; and generally to do and perform all acts that it may be legal for a Board of Directors to do and perform.

## ARTICLE IV - MEETINGS OF SHAREHOLDERS

1. <u>Annual Meeting</u>. The annual meeting of the shareholders for the election of directors and the transaction of whatever other business may be brought before said meeting shall be held at the main office, or such other place as the Board of Directors may designate, on the day of each year specified therefor in the Bylaws, but if no election is held on that day, it may be held on any subsequent day according to the provisions of law; and all elections shall be held according to such lawful regulations as may be prescribed by the Board of Directors.

2. <u>Special Meetings</u>. The Board of Directors, the Chairman, the President, or any one or more shareholders owning, in the aggregate, not less than 25 percent of the stock of this Association, may call a special meeting of shareholders at any time.

3. <u>Notice of Meetings</u>. Unless otherwise provided by the laws of the United States, a notice of the time, place, and purpose of every annual and special meeting of the shareholders shall be given by first-class mail, postage prepaid, mailed at least ten days prior to the date of such meeting to each shareholder of record at his or her address as shown upon the books of this Association.

4 <u>Written Consents</u>. Any action required or permitted to be taken at an annual or special meeting of the shareholders of the Association may be taken without prior written notice and without any meeting if such action is taken by written action, containing a waiver of notice, signed by all of the shareholders entitled to vote on that action.

## ARTICLE V - CAPITAL

1. <u>Capitalization</u>. The amount of authorized capital stock of this Association shall be $1,122,000,000, divided into 112,200,000 shares of common stock of the par value of Ten Dollars ($10.00) each; but said capital stock may be increased or decreased from time to time, in accordance with the provisions of the laws of the United States.

- 2 -

2. Voting Rights. Each holder of common stock of the Association shall be entitled to vote on all matters, one vote for each share of common stock held by such holder. No holder of shares of the capital stock of any class of this Association shall have any pre-emptive or preferential right of subscription to any shares of any class of stock of this Association, whether now or hereafter authorized, or to any obligations convertible into stock of this Association, issued or sold, nor any right of subscription to any thereof other than such, if any, as the Board of Directors, in its discretion, may from time to time determine and at such price as the Board of Directors may from time to time fix.

3. Debt Obligations. The Association, at any time and from time to time, may authorize and issue debt obligations, whether or nor subordinated, without the approval of the shareholders.

## ARTICLE VI - PERPETUAL EXISTENCE

The corporate existence of this Association shall continue until terminated in accordance with the laws of the United States.

## ARTICLE VII - INDEMNIFICATION

To the extent permitted by 12 CFR 7.2014 and consistent with the requirements of 12 USC 1828(k) and the implementing regulations thereunder:

(a) Elimination of Certain Liability of Directors. A director of the Association shall not be personally liable to the Association or its shareholders for monetary damages for breach of fiduciary duty as a director, except for liability (i) for any breach of the director's duty of loyalty to the Association or its shareholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) under Section 174 of the Delaware General Corporation Law, or (iv) for any transaction from which the director derived an improper personal benefit.

(b)(1) Right to Indemnification. Each person who was or is made a party or is threatened to be made a party to or is involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "proceeding"), by reason of the fact that he or she, or a person of whom he or she is the legal representative, is or was a director or officer of the Association or is or was serving at the request of the Association as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans, whether the basis of such proceeding is alleged action or inaction in an official capacity as a director, officer, employee, or agent or in any other capacity while serving as a director, officer, employee or agent, shall be indemnified and held harmless by the Association to the fullest extent authorized by the Delaware General Corporation Law, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Association to provide broader indemnification rights than said law permitted the Association to provide prior to such amendment), against all expense, liability and loss (including attorneys' fees, judgments, fines, ERISA excise taxes or penalties and amounts paid or to be paid in settlement) reasonably incurred or suffered by such person in connection therewith and such indemnification shall

- 3 -

continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of his or her heirs, executors and administrators; provided, however, that the Association shall indemnify any such person seeking indemnification in connection with a proceeding (or part thereof) initiated by such person only if such proceeding (or part thereof) was authorized by the Board of Directors of the Association. The right to indemnification conferred in this paragraph (b) shall be a contract right and shall include the right to be paid by the Association the expenses incurred in defending any such proceeding in advance of its final disposition; provided, however, that, if the Delaware General Corporation Law requires, the payment of such expenses incurred by a director of officer in his or her capacity as a director or officer (and not in any other capacity in which service was or is rendered by such person while a director or officer, including, without limitation, service to an employee benefit plan) in advance of the final disposition of a proceeding, shall be made only upon delivery to the Association of an undertaking, by or on behalf of such director or officer, to repay all amounts so advanced if it shall ultimately be determined that such director of officer is not entitled to be indemnified under this paragraph (b) or otherwise. The Association may, by action of its Board of Directors, provide indemnification to employees and agents of the Association with the same scope and effect as the foregoing indemnification of directors and officers.

      (2) <u>Non-Exclusivity of Rights</u>. The right to indemnification and the payment of expenses incurred in defending a proceeding in advance of its final disposition conferred in this paragraph (b) shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, provision of the Articles of Association, by-law, agreement, vote of shareholders or disinterested directors or otherwise.

      (3) <u>Insurance</u>. The Association may maintain insurance, at its expense, to protect itself and any director, officer, employee or agent of the Association or another corporation, partnership, joint venture, trust or other enterprise against any such expense, liability or loss, whether or not the Association would have the power to indemnify such person against such expense, liability or loss under the Delaware General Corporation Law.

## ARTICLE VIII - AMENDMENT

      These Articles of Association may be amended at any regular or special meeting of the shareholders by the affirmative vote of the holders of a majority of the stock of this Association, unless the vote of the holders of a greater amount of stock is required by law, and in that case by the vote of holders of such greater amount.

**EXHIBIT E to Notice of Removal**
**Page No. 41**

**Back to Search Bank Find**

**History of Wells Fargo Bank North Dakota, National Association, Sioux Falls, North Dakota (FDIC Cert: 3922)**
**Note: This institution is currently part of Wells Fargo Bank, National Association, Sioux Falls, South Dakota (FDIC Cert: 3511)**

| | Date | Event |
|---|---|---|
| 1 | 1/1/1878 | Institution established. Original name: The First National Bank And Trust Company Of Fargo (3922) |
| 2 | 11/1/1979 | Changed name to **First National Bank Of Fargo (3922)**. |
| 3 | 5/1/1983 | Changed name to **Norwest Bank Fargo, National Association (3922)**. |
| 4 | 1/1/1988 | Acquired Norwest Bank Bismarck, National Association (3901) in Bismarck, North Dakota. |
| 5 | 1/1/1988 | Changed name to **Norwest Bank North Dakota, National Association (3922)**. |
| 6 | 1/1/1988 | Acquired Norwest Bank Grafton, National Association (3930) in Grafton, North Dakota. |
| 7 | 1/1/1988 | Acquired Norwest Bank Jamestown, National Association (3939) in Jamestown, North Dakota. |
| 8 | 1/1/1988 | Acquired Norwest Bank Mandan, National Association (3946) in Mandan, North Dakota. |
| 9 | 1/1/1988 | Acquired Norwest Bank Minot, National Association (3949) in Minot, North Dakota. |
| 10 | 1/1/1988 | Acquired Norwest Bank Valley City, National Association (3962) in Valley City, North Dakota. |
| 11 | 1/1/1988 | Acquired Norwest Bank Wahpeton, National Association (3963) in Wahpeton, North Dakota. |
| 12 | 1/1/1988 | Acquired Norwest Bank Hillsboro, National Association (15782) in Hillsboro, North Dakota. |
| 13 | 1/1/1988 | Acquired Norwest Capital Management & Trust Co. (90711) in Fargo, North Dakota. |
| 14 | 9/8/1995 | Acquired Liberty Bank And Trust, National Association (3916) in Dickinson, North Dakota. |
| 15 | 9/8/1995 | Acquired Norwest Bank Grand Forks, National Association (34025) in Grand Forks, North Dakota. |
| 16 | 10/24/1998 | Acquired First National Bank Of Valley City (3961) in Valley City, North Dakota. |
| 17 | 10/24/1998 | Acquired The First State Bank Of Casselton (11517) in Casselton, North Dakota. |
| 18 | 10/24/1998 | Acquired Litchville State Bank (13204) in Litchville, North Dakota. |
| 19 | 8/26/2000 | Changed name to **Wells Fargo Bank North Dakota, National Association (3922)**. |
| 20 | 2/20/2004 | **Merged into and subsequently operated as part of Wells Fargo Bank, National Association in Sioux Falls, South Dakota (3511)** |
| 21 | 4/24/2004 | Acquired Pacific Northwest Bank (30887) in Oak Harbor, Washington. |
| 22 | 9/24/2005 | Acquired First Community Bank, National Association (34049) in Houston, Texas. |
| 23 | 6/17/2006 | Acquired State Bank Of Rogers (9335) in Rogers, Minnesota. |
| 24 | 9/23/2006 | Acquired Fremont National Bank Of Canon City (3000) in Canon City, Colorado. |
| 25 | 9/23/2006 | Acquired Centennial Bank Of Pueblo (22301) in Pueblo, Colorado. |
| 26 | 9/22/2007 | Acquired Placer Sierra Bank (30307) in Auburn, California. |
| 27 | 3/15/2008 | Acquired Greater Bay Bank, National Association (27068) in Palo Alto, California. |
| 28 | 10/18/2008 | Acquired The Jackson State Bank (520) in Jackson, Wyoming. |
| 29 | 10/18/2008 | Acquired Shoshone First Bank (2214) in Cody, Wyoming. |
| 30 | 10/18/2008 | Acquired First State Bank Of Pinedale (18747) in Pinedale, Wyoming. |
| 31 | 10/18/2008 | Acquired Sheridan State Bank (25048) in Sheridan, Wyoming. |
| 32 | 1/1/2009 | Acquired Wells Fargo Bank Grand Junction-downtown, National Association (12863) in Grand Junction, Colorado. |
| 33 | 1/1/2009 | Acquired Wells Fargo Bank Grand Junction, National Association (19109) in Grand Junction, Colorado. |
| 34 | 2/2/2009 | Acquired Wells Fargo Financial Bank (26983) in Sioux Falls, South Dakota. |
| 35 | 4/25/2009 | Acquired Century Bank, National Association (3361) in Texarkana, Texas. |
| 36 | 11/1/2009 | Acquired Wells Fargo Bank Southwest, National Association (27076) in North Las Vegas, Nevada. |
| 37 | 11/7/2009 | Acquired Wachovia Bank Of Colorado, Interim National Association (59019) in Denver, Colorado. |
| 38 | 3/20/2010 | Acquired Wachovia Bank, National Association (33869) in Charlotte, North Carolina. |
| 39 | 3/20/2010 | Acquired Wachovia Bank Of Delaware, National Association (33931) in Wilmington, Delaware. |
| 40 | 4/10/2010 | Acquired Wachovia Card Services, National Association (58496) in Atlanta, Georgia. |
| 41 | 5/10/2010 | Acquired Wells Fargo Hsbc Trade Bank, National Association (34075) in San Francisco, California. |
| 42 | 11/1/2010 | Acquired Wells Fargo Alaska Trust Company, National Association (57755) in Anchorage, Alaska. |
| 43 | 3/31/2011 | Acquired Wells Fargo Central Bank (26839) in Calabasas, California. |

Back

**EXHIBIT E to Notice of Removal**
**Page No. 42**

EXHIBIT F

*OLD REPUBLIC TITLE*
*#50595I-PC*

| | DOCUMENT: 15507561 | Titles 1 / Pages 17 |
|---|---|---|
| | | Fees 57 00 |
| | | Taxes |

**RECORDING REQUESTED BY:**
WORLD SAVINGS BANK

*0015507561*

Copies
AMT PAID 57 00

**WHEN RECORDED MAIL TO:**
WORLD SAVINGS
CENTRAL PROCESSING CENTER
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

BRENDA DAVIS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
Old Republic Title Company

RDE # 102
12/27/2000
8 00 AM

**LOAN NUMBER:** ▓▓▓▓2097

**NOTE AMOUNT:** $492,800.00

*RECEIVED*
*JAN 2 2 2001*
*CENTRAL SERVICES*

FOR RECORDER'S USE ONLY

**DEED OF TRUST**

THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS   $616,000.00  WHICH IS   125 % OF THE "NOTE AMOUNT".

I.   **DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST**
     **(A)   Security Instrument.** This Deed of Trust, which is dated DECEMBER 19, 2000, will be called the "Security Instrument"

     **(B)   Borrower.** ELIZABETH ANN WILLIAMS, AN UNMARRIED WOMAN

sometimes will be called "Borrower" and sometimes simply "I" or "me"

     **(C)   Lender.** WORLD SAVINGS BANK, FSB, A FEDERAL SAVINGS BANK * * * * * * * * * * * * * * * * * * , ITS SUCCESSORS AND/OR ASSIGNEES, will be called "Lender" Lender is A FEDERAL SAVINGS BANK * * * * * * * * * * * *  which is organized and exists under the laws of the United States Lender's address is 1901 HARRISON STREET, OAKLAND, CALIFORNIA  94612.

*ACB 825-24-11.01*

*003*

SD001A1 (08.01.99/1-99) A01A
DEFERRED INTEREST

Page 1
DEED OF TRUST ADJUSTABLE

CA

LENDER'S USE ONLY

EXHIBIT F to Notice of Removal
Page No. 43

2097

(D)    **Note.** The note signed by Borrower and having the same date as this Security Instrument will be called the "Note" The Note shows that I owe Lender the original principal amount of US     **$492,800.00** ("Note Amount"), plus accrued and deferred interest and such other amounts as stated in the Note I have promised to pay this debt in monthly payments and to pay the debt in full by **JANUARY 15, 2031.**

(E)    **Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property"

(F)    **Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured"

(G)    **Person.** Any person, organization, governmental authority or other party will be called "Person"

(H)    **Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO, A CALIFORNIA CORPORATION, is the "Trustee"

## II.    BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to.

(i)    pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender,

(ii)    pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)    keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

## III.    DESCRIPTION OF THE PROPERTY

I give Trustee rights in the Property described below:

(i)    The property which is located at **2940 SCARLETT ROAD, GILROY, CA 95020.** * * * * * * * * * * * * * * * * * * * * * * * The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)    All buildings and other improvements that are located on the Described Property;

   (iii) All rights in other property that I have as owner of the Described Property These rights are known as easements, rights and appurtenances attached to the Property;

   (iv) All rents or royalties and other income from the Described Property,

   (v) All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

   (vi) All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property,

   (vii) All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

   (viii) All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

   (ix) All replacements of or additions to the property described in subsections (ii) through (viii) of this Section, and

   (x) All of the amounts that I pay to Lender under Paragraph 2 below

## IV. BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that (i) I lawfully own the Property, (ii) I have the right to grant and convey the Property to Trustee, and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record

   I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have I promise that I will defend my ownership of the Property against any claims of such rights

## COVENANTS

I promise and I agree with Lender as follows

### 1. BORROWER'S PROMISE TO PAY

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes

### 2. PAYMENTS FOR TAXES AND INSURANCE
  **(A) Borrower's Obligations**

   I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any)

### (B)   Escrow Accounts

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any, (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items" Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq ("RESPA"), unless another law that applies to the Funds sets a lesser amount If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank Lender shall apply the Funds to pay the Escrow Items Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made The Funds are pledged as additional security for all sums secured by this Security Instrument

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender If, under paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument

2097

### 3.   APPLICATION OF BORROWER'S PAYMENTS

Unless the law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes·

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above,

Fourth, to pay interest due under the Secured Notes,

Fifth, to pay deferred interest due under the Secured Notes,

Sixth, to pay principal due under the Secured Notes,

Last, to pay late charges due under the Secured Notes

### 4.   BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a **lien.** I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up, or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice

### 5.   BORROWER'S OBLIGATION TO MAINTAIN INSURANCE

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered

EXHIBIT F to Notice of Removal
Page No. 47

2097

by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval Lender may not refuse to approve my choice unless the refusal is reasonable All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my monthly payments under the Secured Notes and under Paragraphs 1 and 2 above However, Lender and I may agree in writing to delays or changes

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

EXHIBIT F to Notice of Removal
Page No. 48

2097

**6. BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**

I will keep the Property in good repair I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal hazardous materials and hazardous waste laws I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of hazardous waste or any other hazardous materials claim If I do not own but am a tenant on the property, I will fulfill my obligations under my lease I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing

**7. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY**

If (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the Lender's rights in the Property Lender's actions may, without limitation, include appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Section 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs Lender must give me notice before Lender may take any of these actions Although Lender may take action under this Paragraph 7, Lender does not have to do so Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes which have not been paid I will pay those amounts to Lender when Lender sends me a notice requesting that I do so Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7 This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest

**8. LENDER'S RIGHT TO INSPECT THE PROPERTY**

Lender, and others authorized by Lender, may enter upon and inspect the Property They must do so in a reasonable manner and at reasonable times Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection

**9. AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY**

I assign to Lender all my rights (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property, and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other government taking of the property All of those proceeds will be paid to Lender

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by the following fraction (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking The remainder of the proceeds will be paid to me

EXHIBIT F to Notice of Removal
Page No. 49

2097

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my monthly payments under the Secured Notes and under Paragraphs 1 and 2 above However, Lender and I may agree in writing to delays or changes

## 10.   CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS

### (A)   Borrower's Obligations

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the monthly payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

### (B)   Lender's Rights

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the amounts that I owe to Lender under the Secured Notes and under this Security Instrument.

## 11.   OBLIGATIONS OF BORROWER AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together This means that any one of us may be required to pay all of the Sums Secured

## 12.   MAXIMUM LOAN CHARGES

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted

EXHIBIT F to Notice of Removal
Page No. 50

████████2097

limits will be refunded to Borrower Lender may choose to make this refund by reducing the principal owed under the Secured Notes or by making a direct payment to Borrower If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes

**13.   LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument

**14.   NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method The notice will be addressed to me at **2940 SCARLETT ROAD, GILROY, CA 95020.** * * * * * * * * * * * * * * * * * * * * * * * * * * * * A notice will be given to me at an alternative address if I give Lender a notice of my alternative address I may designate only one mailing address at a time for notification purposes. Any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I(C) above entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different address Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law

**15.   GOVERNING LAW; SEVERABILITY**

**This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law."** In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

**16.   BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument

**17.   LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B), enter upon and take possession of the Property, (C) manage the Property, and (D) sign, cancel and change rental agreements and leases If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that (A) my right to occupy the Property ceases at the time the Property is sold, (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property, and (C) my wrongful and

2097

unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds

### 18. INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS

An **assignment** is a transfer of rights to another I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument These rights to bring legal action may include an action for breach of contract, fraud, concealment of a material fact or for intentional or negligent acts I assign these rights, and any proceeds arising from these rights, as permitted by applicable law, to Lender Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to any amount that I may owe to Lender under the Note and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment

### 19. CLERICAL ERRORS

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error

### 20. LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes

### 21. WAIVER OF STATUTE OF LIMITATIONS

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes

### 22. CAPTIONS

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

### 23. MODIFICATION

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender

### 24. CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

EXHIBIT F to Notice of Removal
Page No. 52

█████2097

**(A)**   If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest

**(B)**   The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project, (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association, (v) The Project's covenants, conditions and restrictions, (vi) Other equivalent documents

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments If I do not pay the dues and assessments when due, Lender may, at its option, pay them I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above

**(C)**   If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a **master** or **blanket** policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such **master** or **blanket** policy, then. (i) Lender waives the provision in Paragraph 2(B) above for the monthly payment to Lender of the estimated yearly premium installments for hazard insurance on the Property, and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy I shall give Lender prompt notice of any lapse in the required hazard insurance coverage I shall provide a copy of such **master** or **blanket** policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage

**(D)**   I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking, (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association, or (iv) any action which would have the effect of rendering the **master** or **blanket** hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

EXHIBIT F to Notice of Removal
Page No. 53

2097

**25.   FUTURE ADVANCES**

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

**26.   AGREEMENTS   ABOUT   LENDER'S   RIGHTS   IF   THE   PROPERTY   IS   SOLD OR TRANSFERRED**

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if

(i)      Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender,

(ii)     Lender approves the creditworthiness of the transferee in writing,

(iii)    transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards,

(iv)    an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of Principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v)     the transferee executes an assumption agreement which is satisfactory to Lender.

The loan may be assumed under its then existing terms and conditions with one exception, the Lifetime Rate Cap may be changed The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

**27.   SUBSTITUTION OF TRUSTEE**

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee

EXHIBIT F to Notice of Removal
Page No. 54

2097

**28.  RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each monthly payment on the date it is due, or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts, or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading  If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured

If there is a Breach of Duty by me, Lender may take action to have the Property sold under any applicable law

Lender does not have to give me notice of a Breach of Duty  If Lender does not make a demand for full payment upon a Breach of Duty, Lender may make a demand for full payment upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property

The sale of the Property may be postponed by or at the direction of Lender  If the Property is sold, I agree that it may be sold in one parcel  I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order (A) to all fees, expenses and costs incurred in connection with the sale, including trustees' and attorneys' fees, if any, (B) to all Sums Secured by this Security Instrument, and (C) any excess to the Person or Persons legally entitled to it

**29.  RECONVEYANCE**

Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee  Trustee shall reconvey the Property without warranty to Borrower  Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law  If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable

**30.  STATEMENT OF OBLIGATION**

Lender may collect a fee of $60 00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

SD001M (08 01 99/1-99) A01O
REV  (09.15.99/2-99)

DEED OF TRUST-ADJUSTABLE
Page 13

CA

2097

**31.   QUICK QUALIFYING LOAN PROGRAM**
    I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly This loan is called a "Quick Qualifying Loan" I have stated and I confirm that. (A) I do not have any other Quick Qualifying Loans with Lender, (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument, and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds

    If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes

**32.   OWNER OCCUPANCY**
    Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that   (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded, and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded

    If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

█████2097

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S).

_____ (Seal)
ELIZABETH ANN WILLIAMS

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

ATTACH INDIVIDUAL   NOTARY ACKNOWLEDGEMENT

WORLD SAVINGS BANK, FSB

# E X H I B I T   "A"
## LEGAL DESCRIPTION

LOAN NO. _____████2097_____

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF **SANTA CLARA**
STATE OF **CALIFORNIA** * * * * *  , DESCRIBED AS FOLLOWS

The land referred to is situated in the State of California, County of Santa Clara,
in the unincorporated area, and is described as follows:

PARCEL NO. 2 of that certain Parcel Map being a portion of Lot 7 Catherine Durne
Ranch No. 8, recorded November 17, 1976, Map Book 383, Page 38, Santa Clara County
Records.

**TAPE <u>ONLY</u> THE LEGAL DESCRIPTION TO THIS PAGE.**

GF430 (01 02 99/1-99) R30A
UNIVERSAL

CA

State of California
County of _Santa Clara_

On _12-20-00_ before me, the undersigned, a Notary Public in and
for said State, personally appeared _Elizabeth Ann Williams_

personally known to me (or proved to me on the basis of satisfactory evidence)
to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Phyllis J. Cotta_

Name _PHYLLIS J. COTTA_
          (typed or printed)

(Seal)

PHYLLIS J COTTA
Comm # 1132763
NOTARY PUBLIC CALIFORNIA
Santa Clara County
My Comm Expires Apr 14 2003

**CERTIFICATE OF SERVICE**

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Pasadena, California; my business address is Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, 199 S. Los Robles Avenue, Suite 600, Pasadena, California 91101-2459.

On the date below, I served a copy of the foregoing document entitled:

**NOTICE OF REMOVAL BY DEFENDANT WELLS FARGO, PURSUANT TO 28 U.S.C. § 1332 [DIVERSITY JURISDICTION]**

on the interested parties in said case as follows:

**Served By Means Other than Electronically Via the Court's CM/ECF System:**

*Attorneys for Plaintiff*

James T. Erickson, Esq.
James J. Steinle, Esq.
John L. Mlnarik, Esq.
Caroline M. Reebs, Esq.
THE MLNARIK LAW GROUP
2930 Bowers Avenue
Santa Clara, CA 95051
*Tel: 408.919.0088 | Fax: 408.919.0188*

☒ **BY MAIL:** I am readily familiar with the firm's practice of collection and processing correspondence by mailing. Under that same practice it would be deposited with U.S. Postal Service on that same day with postage fully prepaid at Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. This declaration is executed in Pasadena, California on **July 18, 2013**.

Barbara Cruz
(Type or Print Name)

(Signature of Declarant)

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP