THE MLNARIK LAW GROUP, INC.
JOHN L. MLNARIK (SBN: 257882)
JAMES T. ERICKSON (SBN: 235630)
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone: (408) 919-0088
Facsimile: (408) 919-0188

Attorneys for Plaintiff
ELIZABETH WILLIAMS

The Mlnarik Law Group, Inc.
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone (408) 919-0088 Facsimile (408) 919-0188

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ELIZABETH ANN WILLIAMS,

Plaintiff,

v.

WELLS FARGO BANK, N.A., a national bank for itself and d/b/a WELLS FARGO HOME MORTGAGE, a division of Wells Fargo Bank, N.A.; and DOES 1 to 20, inclusive,

Defendants.

**Case No.: C 13-03387**

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION AGAINST TRUSTEE SALE (FORECLOSURE); MEMO IN SUPPORT; PROPOSED ORDER**

# TABLE OF CONTENTS


| PAGE | |
|---|---|
| i | Table of Contents |
| ii-iv | Table of Authorities |
| 1 | Notice and Motion |
| 2 | I. Introduction and Facts |
| 3 | II. Preliminary Injunctions: Federal and 9th Circuit Jurisprudence |
| 3 | A. Introduction |
| 5 | B. "Likely to Succeed on the Merits" |
| 6 | C. "Likely to Suffer Irreparable Harm" |
| 8 | D. "Balance of Equities Tips in Favor" |
| 9 | E. "In the Public Interest" |
| 10 | III. Plaintiff's Case Satisfies the Requirements for the Preliminary Injunction Requested |
| 10 | A. Plaintiff is Likely to Succeed on the Merits |
| 10 | B. Plaintiff is Likely to Suffer Irreparable Harm in the Absence of Injunction |
| 11 | C. The Balance of Equities Tips in Plaintiff's Favor |
| 12 | D. Given the Contemporary National Disgrace of Illegitimate Creditor Activity in Foreclosure and Other Mortgage-Related Areas, the Requested Preliminary Injunction is in the Public Interest |
| 13 | E. Even on a "Sliding Scale" of Stronger and Weaker Factors, the Injunction is Justified |
| 14 | IV. Conclusion |
| 15 | Order |

# TABLE OF AUTHORITIES

## U.S. SUPREME COURT AND 9TH CIRCUIT CASES

**PAGE**

9 *Aaron v. SEC* (1980) 446 US 680.

4 *Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998).

4, 5 *Alliance for Wild Rockies v. Cottrell* (9th Cir. 2011) 632 F3d 1127.

10 *California Pharmacists Ass'n v. Maxwell-Jolly* (9th Cir. 2010) 596 F3d 1098.

6 *Caribbean Marine Services Co., Inc. v. Baldrige* (9th Cir. 1988) 844 F2d 668.

3 *Chalk v. United States Dist. Ct. Cent. Dist. of Calif.* (9th Cir. 1988) 840 F2d 701.

7 *City of Los Angeles v. Lyons* (1983) 461 US 95.

12 *Corvello v. Wells Fargo Bank* (2013 U.S. App. LEXIS 16415 (9th Cir., 8/8/2013)).

5 *DISH Network Corp. v. Federal Communications Comm'n* (9th Cir. 2011) 653 F3d 771.

8 *Earth Island Institute v. Carlton* (9th Cir. 2010) 626 F3d 462.

3 *eBay Inc. v. MercExchange, L.L.C.* (2006) 547 US 388.

9 *Flexible Lifeline Systems, Inc. v. Precision Lift, Inc.* (9th Cir. 2011) 654 F3d 989.

6 *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal* (2006) 546 US 418.

3 *GoTo.com, Inc. v. Walt Disney Co.* (9th Cir. 2000) 202 F3d 1199.

8 *International Jensen, Inc. v. Metrosound U.S.A., Inc.* (9th Cir. 1993) 4 F3d 819.

4-6, 8 *Leiva-Perez v. Holder* (9th Cir. 2011) 640 F3d 962.

7 *Los Angeles Memorial Coliseum Comm'n v. NFL* (9th Cir. 1980) 634 F2d 1197.

6 *Midgett v. Tri-County Metro. Transp. Dist. of Oregon* (9th Cir. 2001) 254 F3d 846..

9 *Moroccanoil, Inc. v. Moroccan Gold, LLC*, 590 F. Supp. 2d 1271 (C.D. Cal. 2008).

8, 9 *Ohio Oil Co. v. Conway* (1929) 279 US 813.

6 *Perfect 10, Inc. v. Amazon.com, Inc.* (9th Cir. 2007) 508 F3d 1146.

6 *Planet Coffee Roasters v. Hung Dam*, 2010 U.S. Dist. LEXIS 14029 (C.D. Cal. 2010).

7 *Privitera v. California Bd. of Med. Quality Assur.* (9th Cir. 1991) 926 F2d 890.

9 *Salazar v. Buono* (2010) 559 U.S. 700, 130 S.Ct. 1803.

8 *Sardi's Restaurant Corp. v. Sardie* (9th Cir. 1985) 755 F2d 719.

4 *Small v. Avanti Health Systems, LLC* (9th Cir. 2011) 661 F3d 1180.

3 *Stanley v. U. So. Calif.* (9th Cir. 1994) 13 F3d 1313.

3, 4, 10 *Stormans, Inc. v. Selecky* (9th Cir. 2009) 586 F3d 1109.

7 *Sundance Land Corp. v. Comm'y First Fed'l Sav. & Loan* (9th Cir. 1988) 840 F2d 653.

10 *United States v. First Nat'l City Bank* (1965) 379 US 378.

5 *University of Texas v. Camenisch* (1981) 451 US 390.

4 *Villegas Lopez v. Brewer*, 680 F.3d 1068, 1073 (9th Cir. Ariz. 2012).

3 *Weinberger v. Romero-Barcelo* (1982) 456 US 305.

3, 5, 6, 8, 9 *Winter v. Natural Resources Defense Council, Inc.* (2008) 555 US 7.

OTHERS

8 *Ayres v. City of Chicago* (7th Cir. 1997) 125 F3d 1010.

5 *Byrum v. Landreth* (5th Cir. 2009) 566 F3d 442.

7 *Campbell Soup Co. v. ConAgra, Inc.* (3rd Cir. 1992) 977 F2d 86.

7 *Celsis In Vitro, Inc. v. CellzDirect, Inc.* (Fed. Cir. 2012) 664 F3d 922.

4, 6, 8 *Citigroup Global Markets v. VCG Spec. Opp. Master Fund* (2nd Cir. 2010) 598 F3d 30.

7 *City of Los Angeles v. Lyons* (1983) 461 US 95.

12 *Corvello v. Wells Fargo Bank* (2013 U.S. App. LEXIS 16415 (9th Cir., 8/8/2013)).

7 *Foodcomm Int'l v. Barry* (7th Cir. 2003) 328 F3d 300.

6 *Freedom Holdings, Inc. v. Spitzer* (2nd Cir. 2005) 408 F3d 112.

12-13 *In the Matter of Wells Fargo Bank, N.A.,* Consent Order # AA-EC-11-19.

12 *Jones v. Wells Fargo Home Mortg.*, 2012 Bankr. LEXIS 1450 (Bankr. E.D. La. 2012).

9 *Novartis Consumer Health v. Johnson & Johnson-Merck* (3rd Cir. 2002) 290 F3d 578.

7 *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.* (1st Cir. 1996) 102 F3d 12.

5 *Schrier v. University of Colorado* (10th Cir. 2005) 427 F3d 1253.

8 *Scotts Co. v. United Industries Corp.* (4th Cir. 2002) 315 F3d 264.

6 *Singer Mgmt. Consultants, Inc. v. Milgram* (3rd Cir. 2011) 650 F3d 223.

3 *Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.* (2nd Cir. 1995) 60 F3d 27.

9 *United States v. Marine Shale Processors* (5th Cir. 1996) 81 F3d 1329.

4 *Villegas Lopez v. Brewer*, 680 F.3d 1068, 1073 (9th Cir. Ariz. 2012).

7 *WPIX, Inc. v. ivi, Inc.* (2nd Cir. 2012) 691 F3d 275.

THE MLNARIK LAW GROUP, INC.
JOHN L. MLNARIK (SBN: 257882)
JAMES T. ERICKSON (SBN: 235630)
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone: (408) 919-0088
Facsimile: (408) 919-0188

Attorneys for Plaintiff
ELIZABETH WILLIAMS

The Mlnarik Law Group, Inc.
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone (408) 919-0088 Facsimile (408) 919-0188

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ELIZABETH ANN WILLIAMS,

Plaintiff,

v.

WELLS FARGO BANK, N.A., a national bank for itself and d/b/a WELLS FARGO HOME MORTGAGE, a division of Wells Fargo Bank, N.A.; and DOES 1 to 20, inclusive,

Defendants.

**Case No.: C 13-03387**

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION AGAINST TRUSTEE SALE (FORECLOSURE); MEMO IN SUPPORT; PROPOSED ORDER**

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that a hearing will be held on **September 20, 2013 at 9:00 a.m.** before the United States District Court, San Jose Division, 280 South First Street, San Jose, California 95113, on the **MOTION FOR PRELIMINARY INJUNCTION AGAINST TRUSTEE SALE (FORECLOSURE)** (the "Motion") filed by Elizabeth Ann Williams ("plaintiff" or "Williams"). The Motion requests the Court enjoin Wells Fargo Bank, N.A. from selling plaintiff's home (APN 835-24-05) during the duration of her action against defendants and any subsequent appeals. If successful, by separate motion plaintiff will request attorney fees and costs of suit pursuant to California Code of Civil Procedure section 1717.

The Motion is based on the Declaration of Elizabeth Ann Williams, the Motion itself and Memorandum in Support, the pleadings and papers on file herein, and upon such oral and documentary evidence as may be presented at the hearing on the Motion.

The Mlnarik Law Group, Inc.
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone (408) 919-0088 Facsimile (408) 919-0188

## MEMORANDUM IN SUPPORT

### I. Introduction and Facts

If lender abuse in mortgages is an epidemic, this case is the perfect poster child.

Plaintiff Elizabeth Ann Williams ("plaintiff") borrowed money from Defendant Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo") to buy a house, and then took out a second loan (the "HELOC"). Williams Dec. ¶ 3. The facts are spelled out in detail in the amended complaint, but suffice to say that Wells Fargo failed to withdraw payments for the HELOC from plaintiff's bank account, after years of working with such an arrangement. *Id.* Due to the bank's own incompetence, plaintiff went into arrears -- and when she tried to pay, they wouldn't let her. Williams Dec. ¶¶ 9-10. Later they foreclosed, only to be obliged to <u>rescind the foreclosure</u> when they discovered that they had utterly ignored plaintiff's formal offer of full payment (meaning foreclosure was a breach of contract under the standard acceleration clause). *Id.* ¶¶ 18, 21, 23. But because of the wrongful foreclosure, defendant's Keystone Kops employees came to the conclusion that the mortgage itself no longer existed -- and so they stopped withdrawing mortgage payments from plaintiff's bank account. *Id.* ¶¶ 28-32. <u>Once again</u> plaintiff was in default through no fault of her own. *Id.* ¶¶ 33. And again she attempted to pay and again they refused, demanding fees and penalties, and ultimately invoking (again) an acceleration clause and demanding full payment. *Id.* ¶¶ 34-36. Caught in this nightmare, plaintiff had no choice but to attempt to get a loan modification, as though she were a delinquent borrower who needed a favor as a last resort. *Id.* ¶¶ 34, 38. Wells Fargo then subjected plaintiff to years of its all-but-patented loan-mod runaround, eventually concluding (incorrectly, thanks again to its bungling employees) that plaintiff did not qualify for one. *Id.* ¶¶ 39-57 (sic). Finally, a trustee sale date was set (*Id.* ¶ 51), and only though the efforts of plaintiff's attorneys has foreclosure been avoided thus far. Another trustee sale date may follow the hearing on this motion by a few days. *Id.* ¶ 59.

The property is commonly known as 1940 Scarlett Rd., Gilroy, CA 95020, APN 835-24-05.

Plaintiff filed suit against defendant in state court in late June, 2013, and amended the complaint three weeks later; defendant then removed the case to federal court. A TRO granted by the

The Mlnarik Law Group, Inc.
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone (408) 919-0088 Facsimile (408) 919-0188

state court prevented the trustee sale for a month, followed by a stipulation between the parties postponing it a bit further.

## II. Preliminary Injunctions: Federal and 9th Circuit Jurisprudence

### A. Introduction

An injunction is an equitable remedy. "[T]he basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero-Barcelo* (1982) 456 US 305, 312; *Stanley v. U. So. Calif.* (9th Cir. 1994) 13 F3d 1313, 1320.

The primary purpose of a preliminary injunction is to preserve the status quo[1] pending a determination of the action on its merits. *Chalk v. United States Dist. Ct. Cent. Dist. of Calif.* (9th Cir. 1988) 840 F2d 701, 704.

Under the "traditional test," a plaintiff seeking a preliminary injunction "must establish":

- "that he is likely to succeed on the merits";
- "that he is likely to suffer irreparable harm in the absence of preliminary relief";
- "that the balance of equities tips in his favor"; and
- "that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.* (2008) 555 US 7, 20 ("*Winter*").

This four-part or "traditional" test has been held to apply whenever preliminary injunctive relief is sought. See *id.*; *eBay Inc. v. MercExchange, L.L.C.* (2006) 547 US 388, 391; *Stormans, Inc. v. Selecky* (9th Cir. 2009) 586 F3d 1109, 1127.

In the past, along with the "traditional test" set forth above, many courts utilized an alternative test, allowing preliminary injunctive relief upon a showing of <u>either</u>:

1) a combination of probable success on the merits and the <u>possibility</u> (see below) of irreparable injury if injunctive relief is denied;

---

[1] Injunctive relief is not automatically denied because it would alter the status quo; but requests for such relief are subject to higher scrutiny and carry a heavy burden of persuasion. *Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.* (2nd Cir. 1995) 60 F3d 27, 32-33. "Status quo" means the last uncontested status that preceded the pending controversy. *GoTo.com, Inc. v. Walt Disney Co.* (9th Cir. 2000) 202 F3d 1199, 1210. In the instant case, plaintiff simply asks to remain in her house and pay her monthly mortgage, as she had always done before defendant's incompetence made such a simple arrangement impossible.

The Mlnarik Law Group, Inc.
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone (408) 919-0088 Facsimile (408) 919-0188

<u>or</u> 2) the likelihood of success was such that "serious questions going to the merits were raised and the balance of hardships tipped sharply in plaintiff's favor."

See *Alliance for Wild Rockies v. Cottrell* (9th Cir. 2011) 632 F3d 1127, 1131-32 ("*Cottrell*"); see also *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.* (2nd Cir. 2010) 598 F3d 30, 36, fn. 5 (noting that prior to *Winter*, majority of circuits applied "sliding scale" approach).[2]

The advantage of this "sliding scale" test is that it provides flexibility; the trial court can "balance" the requirements for a preliminary injunction "so that a stronger showing of one element may offset a weaker showing of another." For example, a stronger showing of irreparable harm to plaintiff may offset a lesser showing of likelihood of success on the merits. *Cottrell, supra*, 632 F3d at 1131.

Insofar as the "sliding scale" test allowed injunctive relief upon the mere <u>possibility</u> of irreparable injury to plaintiffs, it was expressly overruled by *Winter*, which requires a <u>likelihood</u> of irreparable injury in every case. *Stormans, Inc. v. Selecky* (9th Cir. 2009) 586 F3d 1109, 1127; see *Small v. Avanti Health Systems, LLC* (9th Cir. 2011) 661 F3d 1180, 1187 ("*Winter* did not change the requisite showing for any individual factor other than irreparable harm").

Nevertheless, a form of the "sliding scale" approach survives *Winter*: According to the Ninth Circuit, even after *Winter*, "serious questions going to the merits" and a "balance of hardships

---

[2] But see:

> To the extent Lopez argues that the "serious questions going to the merits" consideration is a separate and independent analysis from the court's assessment of Lopez's likelihood of success on the merits, Lopez misunderstands our precedent. See *M.R. v. Dreyfus*, 663 F.3d 1100, 1108 (9th Cir. 2011) (articulating preliminary injunction standard in terms of likelihood of success on the merits or serious questions going to the merits). Because the district court did not err in determining that Lopez failed to demonstrate a likelihood of success on the merits, it follows that Lopez also failed to raise serious questions going to the merits.
>
> *Villegas Lopez v. Brewer*, 680 F.3d 1068, 1073 (9th Cir. Ariz. 2012)

But in the 9th Circuit, as noted below, even the phrase "likelihood of success" does not mean better-than-even chances. See *Leiva-Perez v. Holder* (9th Cir. 2011) 640 F3d 962, 966. Although overruling *Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998) on other grounds, the former case cites *Abbassi* for the proposition that "a stay petitioner [must] show <u>either</u> 'a probability of success on the merits' <u>or</u> that 'serious legal questions are raised,' <u>depending on the strength of the petitioner's showing on the other stay factors</u>". *Leiva-Perez*, *supra*, at 967 (emphasis added).

The Mlnarik Law Group, Inc.
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone (408) 919-0088 Facsimile (408) 919-0188

that tip sharply toward" plaintiff can support a preliminary injunction provided "plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Cottrell, supra*, 632 F3d at 1131–32; see *Leiva-Perez v. Holder* (9th Cir. 2011) 640 F3d 962, 966 (*Winter* "did not alter our authority to balance the elements of the preliminary injunction test, so long as a certain threshold showing is made on each factor"); but see also *DISH Network Corp. v. Federal Communications Comm'n* (9th Cir. 2011) 653 F3d 771, 776 (plaintiff "must demonstrate that it meets all four of the elements of the preliminary injunction test established by *Winter*").[3]

To sum up 9th Circuit law:

> [A] petitioner seeking [an injunction] must show that irreparable harm is probable and either: (a) a strong likelihood of success on the merits and that the public interest does not weigh heavily against a stay; or (b) a substantial case on the merits and that the balance of hardships tips sharply in the petitioner's favor. As has long been the case, these standards represent the outer extremes of <u>a continuum</u>, with the <u>relative hardships</u> to the parties providing the <u>critical element</u> in determining at what point on the continuum [an injunction] is justified.
>
> *Leiva-Perez, supra,* 640 F.3d at 971 (applying standard to stays, but explaining at page 966 that the analysis is the same for preliminary injunctions)(internal quote-marks and brackets omitted)(emphasis added).

**B. "Likely to Succeed on the Merits"**

Regardless of what formulation is applied, to obtain a preliminary injunction, plaintiff must show that it is "likely" to prevail on the merits. *Winter*, *supra*, 555 US at 20.

Preliminary injunction is customarily granted on the basis of procedures less formal and evidence less complete than at trial. Therefore, the moving party need not prove his or her case in full at a preliminary injunction hearing. *University of Texas v. Camenisch* (1981) 451 US 390, 395; *Byrum v. Landreth* (5th Cir. 2009) 566 F3d 442, 446 (plaintiff's evidence need not meet summary

[3] In certain "disfavored" cases, courts hold that the four factors listed must be "closely scrutinized" before a preliminary injunction will be granted. These "disfavored" applications include injunctions that:

- disturb the status quo;
- are mandatory as opposed to prohibitory (because a mandatory injunction always alters the status quo by commanding an affirmative act); or
- provide substantially all the relief the movant would obtain after a full trial on the merits.

*Schrier v. University of Colorado* (10th Cir. 2005) 427 F3d 1253, 1260-61.

None of these apply here, and plaintiff's counsel has been unable to find any suggestion that injunctions applied to trustee sales are "disfavored."

The Mlnarik Law Group, Inc.
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone (408) 919-0088 Facsimile (408) 919-0188

judgment standard). The burdens at the preliminary injunction stage "track the burdens at trial." Thus, once the moving party has carried its burden of showing a likelihood of success on the merits, the burden shifts to the nonmoving party to show a likelihood that its affirmative defense will succeed. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal* (2006) 546 US 418, 429; *Perfect 10, Inc. v. Amazon.com, Inc.* (9th Cir. 2007) 508 F3d 1146, 1158.

Notably, however, a preliminary injunction may be granted even if it cannot be determined with certainty that the moving party is more likely than not to prevail on the merits if "the costs outweigh the benefits of not granting the injunction." *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.* (2nd Cir. 2010) 598 F3d 30, 35; see *Leiva-Perez v. Holder* (9th Cir. 2011) 640 F3d 962, 966 (requirement of likelihood of success does not require showing that success on the merits is "more likely than not")[4] (cf. footnote 2 above); *Singer Mgmt. Consultants, Inc. v. Milgram* (3rd Cir. 2011) 650 F3d 223, 229 ("A 'likelihood' [of success] does not mean more likely than not").

**C. "Likely to Suffer Irreparable Harm"**

Unless Congress provides otherwise, plaintiffs seeking preliminary relief must demonstrate that irreparable injury is likely in the absence of an injunction. *Winter*, *supra*, 555 US at 22; see *Freedom Holdings, Inc. v. Spitzer* (2nd Cir. 2005) 408 F3d 112, 114 (irreparable injury is "the single most important prerequisite for the issuance of a preliminary injunction"). "'Irreparable injury' has been defined as that injury which is certain and great. *Coffee Dan's, Inc. v. Coffee Don's Charcoal Broiler*, 305 F.Supp. 1210, 1216 (N.D.Cal. 1969)." *Planet Coffee Roasters, Inc. v. Hung Dam*, 2010 U.S. Dist. LEXIS 14029 (C.D. Cal. 2010).

plaintiff must demonstrate "immediate threatened harm." *Caribbean Marine Services Co., Inc. v. Baldrige* (9th Cir. 1988) 844 F2d 668, 674. Establishing a risk of irreparable harm in the indefinite future is not enough. The harm must be shown to be imminent. *Midgett v. Tri-County Metro. Transp. Dist. of Oregon* (9th Cir. 2001) 254 F3d 846, 850-51.

[4] "What is clear, however, is that to justify a stay, petitioners need not demonstrate that it is more likely than not that they will win on the merits." *Leiva-Perez v. Holder*, 640 F.3d 962, 966.

The Mlnarik Law Group, Inc.
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone (408) 919-0088 Facsimile (408) 919-0188

But where a timely trial is not possible, the fact the threatened harm will not occur for several months is not reason, by itself, to deny a preliminary injunction. *Privitera v. California Bd. of Med. Quality Assur.* (9th Cir. 1991) 926 F2d 890, 897 (improper to deny preliminary injunction solely because license revocation hearing was three months away).

Past harm is insufficient; plaintiffs seeking an injunction based on alleged past wrongs must show there is a real and immediate threat that they will be wronged again. *City of Los Angeles v. Lyons* (1983) 461 US 95, 102. "[P]laintiff must demonstrate potential harm which cannot be re-dressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." *Campbell Soup Co. v. ConAgra, Inc.* (3rd Cir. 1992) 977 F2d 86, 91; *Los Angeles Memorial Coliseum Comm'n v. NFL* (9th Cir. 1980) 634 F2d 1197, 1202 (monetary harm alone does not constitute irreparable harm).

When plaintiff suffers "substantial injury that is not accurately measurable or adequately compensable by money damages, irreparable harm is a natural sequel." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.* (1st Cir. 1996) 102 F3d 12, 18; *WPIX, Inc. v. ivi, Inc.* (2nd Cir. 2012) 691 F3d 275, 285 ("Harm may be irreparable where the loss is difficult to replace or measure, or where plaintiffs should not be expected to suffer the loss").

The legal remedy (damages) need not be wholly ineffectual. Rather, it must be "seriously deficient as compared to the harm suffered." *Foodcomm Int'l v. Barry* (7th Cir. 2003) 328 F3d 300, 304; see *Celsis In Vitro, Inc. v. CellzDirect, Inc.* (Fed. Cir. 2012) 664 F3d 922, 930 ("simple fact that one could, if pressed, compute a money damages award does not always preclude a finding of irreparable harm").

The persuasive authority in the three paragraphs above (i.e., from other circuits) applies as precedent in the instant case in that a "loss of an interest in real property constitutes an irreparable injury." *Sundance Land Corp. v. Community First Fed'l Sav. & Loan Ass'n* (9th Cir. 1988) 840 F2d 653, 661-62 (loss of property through foreclosure).[5]

[5] "Since the property at issue is unique, [plaintiff's] legal remedy -- i.e., damages -- is inadequate. [plaintiff's]complaint therefore meets the equitable criteria for stating a cause of action for injunctive relief." *Sundance Land Corp.*, 840 F.2d 653, 661-62.

The Mlnarik Law Group, Inc.
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone (408) 919-0088 Facsimile (408) 919-0188

**D. "Balance of Equities Tips in Favor"**

Before a preliminary injunction may issue, the court must identify the harm that a preliminary injunction might cause the defendant and weigh it against plaintiff's threatened injury. "[T]he real issue in this regard is the degree of harm that will be suffered by the plaintiff or the defendant if the injunction is improperly granted or denied." *Scotts Co. v. United Industries Corp.* (4th Cir. 2002) 315 F3d 264, 284; *Earth Island Institute v. Carlton* (9th Cir. 2010) 626 F3d 462, 475 ("The assignment of weight to particular harms is a matter for district courts to decide"); see *Winter, supra*, 555 US at 24.

According to the 7th Circuit: "A plaintiff who does not have a very high probability of ultimately prevailing will be entitled to preliminary relief if he faces very great irreparable harm and the defendant very little (unless third parties would be hurt)." *Ayres v. City of Chicago* (7th Cir. 1997) 125 F3d 1010, 1013 (parentheses in original).[6]

In assessing the relative hardships to each party, the court must consider the impact the injunction may have on the respective parties. The relative size and strength of each party may be pertinent to this inquiry. *Sardi's Restaurant Corp. v. Sardie* (9th Cir. 1985) 755 F2d 719, 726 (preliminary injunction against use of "Sardi's" denied because established restaurant less likely to be adversely impacted by identity problem than new restaurant); *International Jensen, Inc. v. Metrosound U.S.A., Inc.* (9th Cir. 1993) 4 F3d 819, 827.

In evaluating the relative hardships, one factor to consider is whether the potential injury to defendant resulting from the injunction could be adequately protected against by a bond. *Ohio Oil Co. v. Conway* (1929) 279 US 813, 815.

According to the 3rd Circuit, self-inflicted harm is to be disregarded as a factor in the balance of harms: In striking this balance, the injury a defendant might suffer if an injunction were imposed should be discounted if defendant brought that injury upon itself by the conduct sought to

---

[6] As noted above, a preliminary injunction may be granted even if it cannot be determined with certainty that the moving party is more likely than not to prevail on the merits **<u>if</u>** "the costs outweigh the benefits of not granting the injunction." *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.* (2nd Cir. 2010) 598 F3d 30, 35; *accord Leiva-Perez v. Holder* (9th Cir. 2011) 640 F3d 962.

The Mlnarik Law Group, Inc.
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone (408) 919-0088 Facsimile (408) 919-0188

be enjoined. *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.* (3rd Cir. 2002) 290 F3d 578, 596 ("the injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought that injury upon itself"); see also *Moroccanoil, Inc. v. Moroccan Gold, LLC*, 590 F. Supp. 2d 1271, 1282 (C.D. Cal. 2008) ("any injury that Defendants may suffer if preliminarily enjoined may be discounted by the fact that Defendants brought the injury upon themselves"). Similarly, the 5th Circuit has ruled that a court need not "balance the hardships" when defendant's conduct has been willful -- and referred to this as a "traditional principle[] of equity." See *United States v. Marine Shale Processors* (5th Cir. 1996) 81 F3d 1329, 1358-59 (court need not balance equities where defendant has willfully and repeatedly violated laws).

Regardless of whether the underlying claim requires proof of scienter, scienter is one of the aggravating factors taken into account in exercising the court's equitable discretion whether to grant injunctive relief. Thus, defendant's intentional wrongdoing in the past may be relevant to the likelihood of recurrent violations. *Aaron v. SEC* (1980) 446 US 680, 701.

Finally, the moving party's failure to "do equity" is a realistic concern in connection with preliminary injunctions. The court's goal is to preserve the status quo pending final determination on the merits. Thus, preliminary injunctions are frequently granted upon condition that plaintiff do certain acts for continued validity of the injunction (e.g., pay necessary expenses to preserve contested property). As noted above, for example, the plaintiff could post a bond. *Ohio Oil Co. v. Conway* (1929) 279 US 813, 815.

**E. "In the Public Interest"**

In exercising their sound discretion, courts of equity "pay particular regard for [sic] the public consequences in employing the extraordinary remedy of injunction." *Winter*, *supra*, 555 US at 24 (citation, internal quotes omitted); *Salazar v. Buono* (2010) 559 U.S. 700 (no pinpoint cite yet available), 130 S.Ct. 1803, 1816; *Flexible Lifeline Systems, Inc. v. Precision Lift, Inc.* (9th Cir. 2011) 654 F3d 989, 996-97.

///

Where an injunction's reach is narrow and affects only the parties with no impact on nonparties, "the public interest will be at most a neutral factor in the analysis rather than one that favors granting or denying the preliminary injunction." *Stormans, Inc. v. Selecky* (9th Cir. 2009) 586 F3d 1109, 1139 (internal quotes and brackets omitted).

But if the injunction goes beyond the parties, carrying with it a potential for public consequences, the "public interest" becomes relevant to whether an injunction should issue: "Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." *United States v. First Nat'l City Bank* (1965) 379 US 378, 383; *California Pharmacists Ass'n v. Maxwell-Jolly* (9th Cir. 2010) 596 F3d 1098, 1114-15.

The Mlnarik Law Group, Inc.
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone (408) 919-0088 Facsimile (408) 919-0188

## III. Plaintiff's Case Satisfies the Requirements for the Preliminary Injunction Requested

### A. Plaintiff is Likely to Succeed on the Merits

Even if it cannot be determined with certainty that plaintiff is likely to prevail, the costs outweigh the benefits of permitting the foreclosure to go forward prior to the conclusion of this action. But here, the facts are overwhelmingly in plaintiff's favor. If defendant denies the substance of the facts, it will simply be perjury -- and there are more than enough employees to depose to establish that plaintiff's narrative is accurate in all essential respects. On the count of breach of good faith and fair dealing alone, plaintiff's case is devastating: she did everything possible to fulfill her end of the bargain; she set up a bank account to automatically pay her mortgage; she spent <u>several years</u> struggling against defendant's incompetence -- and, perhaps, against its deliberate obstruction. All this, even though none of what occurred was remotely her fault. At the very least, the burden has shifted to defendant to show a likelihood that its affirmative defenses will succeed as to all counts of the complaint -- and <u>that</u> result is nowhere near as likely as not.

### B. Plaintiff is Likely to Suffer Irreparable Harm in the Absence of Injunction

Loss of an interest in real property constitutes an irreparable injury. The loss is difficult to replace or measure, not accurately compensable by money damages -- and plaintiff should not be

The Mlnarik Law Group, Inc.
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone (408) 919-0088 Facsimile (408) 919-0188

expected to suffer the loss. One could, if pressed, compute a money damages award; but that would be seriously deficient as compared to the harm suffered. A timely trial is not possible. There is an imminent threatened harm or injury which is certain and great. Based on defendant's past wrongs in this case, and on the repeated scheduling of trustee sales (including a rescinded foreclosure), there is a real and immediate threat that plaintiff will be wronged again. The requested preliminary injunction is the only way of protecting plaintiff from harm

**C. The Balance of Equities Tips in plaintiff's Favor**

The balance here not merely tips on the side of plaintiff but crashes down harder than the railroad scale in *Palsgraf v. Long Island*. Anyone with an internet connection can discover that Wells Fargo & Company (defendant's parent) made $20 billion in profits during the past four quarters on revenue of $80 billion; its enterprise value is $190 billion and its market capitalization is $230 billion. By contrast, plaintiff is an individual trying only to avoid a miscarriage of justice: being deprived of her home through no fault of her own, due to the spectacular incompetence if not malfeasance of defendant. Moreover, she is -- as she has always been -- willing to make monthly mortgage payments in the meantime.

Notably, Wells Fargo's "injury" (inability to kick an innocent person out of her house) is self-inflicted. Defendant falsely concluded that the mortgage contract was nullified following its own boneheaded mistake in not withdrawing funds for a HELOC, after plaintiff had established a bank account specifically for that purpose. Then defendant refused to accept mortgage payments even though plaintiff offered the money in person. By contrast, every step of the way, plaintiff has done everything she can to deal with defendant's mind-boggling ineptness and the resulting labyrinthine runaround inflicted upon her (perhaps intentionally, as company policy) -- meanwhile disrupting her whole life and running up thousands of dollars in legal fees, not to mention untold tens of thousands in increased borrowing costs due to the unwarranted effect on her credit rating. She has drawn the line only at paying unjustified and outrageous fees and penalties, and at paying the full amount under an unjustly invoked acceleration clause.

///

The Minarik Law Group, Inc.
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone (408) 919-0088 Facsimile (408) 919-0188

**D. Given the Contemporary National Disgrace of Illegitimate Creditor Activity in Foreclosure and Other Mortgage-Related Areas, the Requested Preliminary Injunction is in the Public Interest**

In Judge Noonan's concurrence in *Corvello v. Wells Fargo Bank* (2013 U.S. App. LEXIS 16415 (9th Cir., 8/8/2013)), he writes that the effect of Wells Fargo's typical loan modification process "is not to make a contract but to engage in flim-flam or, in plain words, to work a fraud.... 'Heads I win, tails you lose' is a fraudulent coin toss. Wells Fargo did no better. " *Id.* at *20.

Last year, an Eastern District of Louisiana court had this to say:

> Wells Fargo's conduct is clandestine. Rather than provide [the homeowner] with a complete history of his debt on an ongoing basis, Wells Fargo simply stopped communicating with [him] once it deemed him in default. At that point in time, fees and costs were assessed against his account .... Only through litigation was this practice discovered. Wells Fargo admitted to the same practices for all other loans in bankruptcy or default.... Well Fargo has taken advantage of borrowers who rely on it to accurately apply payments and calculate the amounts owed.... [It relies] on the ignorance of borrowers or their inability to fund a challenge to its demands, rather than voluntarily relinquish gains obtained through improper accounting methods.... [W]hen exposed, it revealed its true corporate character by denying any obligation to correct its past transgressions and mounting a legal assault to ensure it never had to. Society requires that those in business conduct themselves with honesty and fair dealing. Thus, there is a strong societal interest in deterring such future conduct ....
>
> *Jones v. Wells Fargo Home Mortg., Inc. (In re Jones)*, 2012 Bankr. LEXIS 1450, *21-23 (Bankr. E.D. La. 2012) (emphasis added).

Wells Fargo has become notorious for its shady (if not illegal) practices in regard to mortgages. It was party to a five-bank $25 billion Consent Order imposed by the federal government for "unsafe or unsound practices in [its] residential mortgage servicing and in [its] initiation and handling of foreclosure proceedings" (see page 1, at footnote 7 below). Its compliance was so poor that the government was obliged to amend the order, addressing the bank's deplorable record in loan modification runarounds and dual tracking.

The Consent Order[7] states:

> In connection with certain foreclosures of loans in its residential mortgage servicing portfolio, [Wells Fargo]:...
>
> (d) **failed to devote sufficient financial, staffing and managerial resources to**

[7] Order available at http://www.occ.gov/news-issuances/news-releases/2011/nr-occ-2011-47k.pdf .

The Mlnarik Law Group, Inc.
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone (408) 919-0088 Facsimile (408) 919-0188

> **ensure proper administration of its foreclosure processes**;
> (e) **failed to devote to its foreclosure processes adequate oversight, internal controls, policies, and procedures, compliance risk management, internal audit, third party management, and training**; and
> (f) **failed sufficiently to oversee outside counsel and other third-party providers handling foreclosure-related services**.
> *In the Matter of Wells Fargo Bank, N.A.,* Consent Order # AA-EC-11-19 (April 13, 2011), Art. I, section 2 (emphasis added).

The Amendment[8] mandates (at the first sections of Articles I and IV) an additional payment of $765 **m**illion plus "loss mitigation or other foreclosure prevention actions" of $1.225 **b**illion.

The California Monitor[9] (Attorney General's Office) states (emphasis added):

> [B]anks have no incentive to hasten loan modifications to be complete.... [T]he structure of payment for mortgage servicing contains incentives to slow the loan modification process. <u>At the foreclosure sale, default fees, such as late fees and property preservation fees, are paid to the mortgage servicer before the property owner/investors recover on the loan. The more fees accumulate -- if a property will be foreclosed ultimately -- the higher profits a servicer can earn</u>.... [¶] Banks giving up on homeowners who were trying to follow the rules to get mortgage help paying their mortgages was the principal example of unfair servicer behavior. That problem resulted from misaligned incentives.

Granted, this case involves only one homeowner -- but her experience echoes that of hundreds of thousands of others. Wells Fargo has led her down the garden path for years in its loan modification pseudo-process, after necessitating this result by the errors and obstructions of its employees. Meanwhile, it has outrageously charged (and partly collected) late fees and other penalties. Given the experience of so many of its victims, Defendant's intentional wrongdoing in the past is relevant to the likelihood of recurrent violations. Wells Fargo must be made to deal with the consequences of its incompetence and its non-, mis-, and malfeasance. The more often courts say "thus far and no further," the less will Wells Fargo find it worthwhile to shamelessly ruin the lives of its debtors.

///

///

---

[8] Amendment available at http://www.occ.gov/static/enforcement-actions/ea2013-132.pdf .

[9] See p. 6, "The 'Complete' Application Problem," June 19, 2013, available at http://californiamonitor.org/wp-content/uploads/2013/06/FINAL-June-19-Complete-App-Monitor-Report.pdf .

The Mlnarik Law Group, Inc.
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone (408) 919-0088 Facsimile (408) 919-0188

**E. Even on a "Sliding Scale" of Stronger and Weaker Factors, the Injunction is Justified**

Here, irreparable harm isn't merely probable -- it's a done deal if the bank gets its way: plaintiff will lose her home.

While it may be premature to predict a strong likelihood of success on the merits, not only does the public interest not weigh against a stay, stopping this foreclosure (and every other like it, as they arise) is strongly in the public interest: People's homes are being stolen out from under them by the owners of the greatest concentration of wealth in the world, the banks. This must be stopped. But until legislation besomes effective it will have to happen one home and one court at a time.

Furthermore, there is obviously a substantial case on the merits if in fact defendant is unable to rebut plaintiff's evidence; and the balance of hardships tips not sharply but spectacularly in plaintiff's favor, particularly given her willingness to make monthly mortgage payments in the meantime. The relative hardships to the parties could not be more starkly distinguished.

## IV. Conclusion

For the reasons given above, plaintiff respectfully requests this court to enjoin defendant from selling the subject property during the duration of this legal action, including any subsequent appeals. If successful, by separate motion plaintiff will request attorney fees and costs of suit pursuant to California Code of Civil Procedure section 1717.

**THE MLNARIK LAW GROUP, INC.**

Dated: August 16, 2013

/s/ Jim Erickson
JIM ERICKSON
Attorney(s) for plaintiff

THE MLNARIK LAW GROUP, INC.
JOHN L. MLNARIK (SBN: 257882)
JAMES J. STEINLE (SBN: 237291)
CAROLINE M. REEBS (SBN: 282915)
JAMES T. ERICKSON (SBN: 235630)
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone: (408) 919-0088
Facsimile: (408) 919-0188

Attorneys for plaintiff
ELIZABETH WILLIAMS

**ORDER**

**GOOD CAUSE APPEARING, AND IN ACCORDANCE WITH THE PARTIES' STIPULATION, IT IS HEREBY ORDERED:**

Defendant, Wells Fargo Bank, N.A., their agents and assigns are hereby enjoined from foreclosing on the subject property, commonly known as 1940 Scarlett Road, Gilroy, CA 95020, APN 835-24-051, until ______________________________.

Dated: ____________________

______________________________
Hon. ______________________________
Judge of the District Court

The Mlnarik Law Group, Inc.
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone (408) 919-0088 Facsimile (408) 919-0188