IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| ELIZABETH ANN WILLIAMS, | CASE NO. 5:13-cv-03387 EJD |
|---|---|
| Plaintiff(s), | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| WELLS FARGO BANK, N.A., | [Docket Item No(s). 33] |
| Defendant(s). | |

In this action concerning real property located in Gilroy, California, Plaintiff Elizabeth Ann Williams ("Plaintiff") filed a Second Amended Complaint ("SAC") asserting causes of action for (1) violation of California's Unfair Competition Law ("UCL"), Business and Professions Code § 17200, (2) breach of the implied covenant of good faith and fair dealing, (3) anticipatory breach of contract, (4) declaratory relief, and (5) injunctive relief against Defendant Wells Fargo Bank, N.A. ("Wells Fargo").

Federal jurisdiction arises pursuant to 28 U.S.C. § 1332. Presently before the court is Wells Fargo's Motion to Dismiss the SAC. See Docket Item No. 33.[1] For the reasons explained below, Wells Fargo's motion will be granted in part and denied in part.

---

[1] Wells Fargo's Request for Judicial Notice (Docket Item No. 34) is GRANTED. Fed. R. Evid. 201(b)(2).

1
CASE NO. 5:13-cv-03387 EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

## I. BACKGROUND

The court previously explained the background of this action in the order granting Plaintiff's preliminary injunction motion, and repeats it again here. This action stems from two loans which Plaintiff obtained from predecessors of Wells Fargo. The first was a mortgage from World Savings Bank obtained on or about December 27, 2000, and the second was a home equity line of credit ("HELOC") obtained on or about April 6, 2006.

From December 2000 until approximately May 2007, Plaintiff paid both of her mortgage payments via automatic bank withdrawals. In or around May 2007 Plaintiff opened a new bank account. Plaintiff informed Wachovia Corporation (Wells Fargo's predecessor) that she had a new bank account and directed them to withdraw monthly payments for both her mortgage and the HELOC. However, HELOC payments were not automatically deducted, although mortgage payments continued. Plaintiff called Wells Fargo, but the situation was not corrected.

After several months, Wells Fargo requested that Plaintiff pay late fees due on the uncollected HELOC payments. In December 2007, Wells Fargo recorded a Notice of Default on the HELOC. Plaintiff claims she attempted to contact Wells Fargo to arrange payment of all late fees and arrears, however Wells Fargo did not respond.

In September or October 2008, Plaintiff was served with eviction and foreclosure notices, stemming from the default on the HELOC. Plaintiff engaged the help of an attorney, who sent a letter to Wells Fargo requesting a reinstatement amount and stating that Plaintiff was willing and able to pay the reinstatement figure with certified funds. The trustee's deed upon sale was rescinded on or about October 14, 2008, and around January, 2009, Wells Fargo reinstated the HELOC after Plaintiff paid fees and expenses.

In the meantime, Wells Fargo stopped automatically withdrawing payments for Plaintiff's mortgage in October, 2008. In March, 2009, Plaintiff received a statement indicating that she was five months late on payments for her mortgage and requesting fees to cure her default. Plaintiff contacted Wells Fargo to inquire about repaying her mortgage, but was told that there was no record of her loan. In March, 2009, Plaintiff met with a bank representative to pay the full amount of her loan payments, but was told that she would be required to pay fees and penalties in addition to the

arrears, which she refused to pay. Wells Fargo's employee refused to accept any payment that did not include the fees and penalties. On August 6, 2009, Wells Fargo recorded a Notice of Default on the mortgage. Starting in October, 2009, Plaintiff submitted a number of loan modification applications, which were each denied.

Plaintiff initiated this action in Santa Clara County Superior Court on June 27, 2013, and Wells Fargo removed it on July 19, 2013. Plaintiff filed the SAC on September 25, 2013. This motion followed.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). Moreover, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Twombly, 550 U.S. at 556-57.

When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). The court must accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988). However, the court may consider material submitted as part of the complaint or relied upon in the complaint, and may also consider material subject to judicial notice. See Lee v. City of Los Angeles, 250 F.3d 668, 688-69 (9th Cir. 2001). "[M]aterial which is properly submitted as part of the complaint may be considered." Twombly, 550 U.S. at 555. Furthermore, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Id.

## III. DISCUSSION

Wells Fargo makes a series of arguments in support of its Motion to Dismiss, each of which are discussed below in turn.[2]

### A. Tender

Wells Fargo first argues that all of Plaintiff's causes of action must be dismissed because they are not "accompanied by a legitimate tender." Wells Fargo's reliance on the tender rule, however, is misplaced in this case.

Generally speaking, "[t]ender is a condition precedent to any challenge to the regularity or the validity of foreclosure proceedings. . . ." Dubose v. Suntrust Mortg., Inc., No. 5:11-cv-03264 EJD, 2012 U.S. Dist. LEXIS 55356, at *8, 2012 WL 1376983 (N.D. Cal. Apr. 9, 2012). This rule "arises out of a paradigm where, *by definition*, there is no way that a foreclosure sale can be avoided absent payment of *all* the indebtedness." Mabry v. Super. Ct., 185 Cal. App. 4th 208, 225 (2010) (emphasis preserved). Under those circumstances, "[a]ny irregularities in the sale would necessarily be harmless to the borrower if there was no full tender." Id. "Recognized exceptions to the tender rule include when (1) the underlying debt is void, (2) the foreclosure sale or trustee's deed is void on its face, (3) a counterclaim offsets the amount due, (4) specific circumstances make it inequitable to enforce the debt against the party challenging the sale, or (5) the foreclosure sale has not yet occurred." Chavez v. Indymac Mortg. Servs., 219 Cal. App. 4th 1052, 1062 (2013).

Under the instant allegations, this case falls outside the scope of the tender rule because two of the Chavez exceptions can be applied. Since a foreclosure sale has not been completed on the Gilroy property (and, indeed, one has been enjoined by this court), the fifth exception cuts against a tender requirement. See Barrionuevo v. Chase Bank, N.A., 885 F. Supp. 2d 964, 969-70 (N.D. Cal. 2012) ("[A] growing number of federal courts have explicitly held that the tender rule only applies in cases seeking to set aside a completed sale, rather than an action seeking to prevent a sale in the first place."). In addition, Plaintiff has identified in the SAC a series of other "irregularities" that occurred in relation to her loans - including the disappearance and then reappearance of the same

---

[2] However, the statute of limitations argument is not addressed because Wells Fargo withdrew it in the reply brief.

1  loan, as well as a refusal to accept any payment other than the full amount owed with added
2  penalties - that render inequitable further foreclosure proceedings at the behest of Wells Fargo.
3  Thus, the fourth Chavez exception also militates against a tender requirement here.  See id.
4  ("Several court[s] have recognized a general equitable exception to applying the tender rule where it
5  would be inequitable to do so." (internal quotation omitted)).

6  Accordingly, Wells Fargo's request to dismiss all causes of action for failure to tender is
7  denied.

**B.    The UCL Claim**

9  Wells Fargo argues the UCL claim should be dismissed because (1) it is a breach of contract
10 claim masquerading as a tort claim and (2) it is improperly based on Plaintiff's unsuccessful
11 attempts to obtain a loan modification.  The court disagrees that these reasons compel dismissal.

12 The UCL proscribes three varieties of competition: "acts or practices which are unlawful, or
13 unfair, or fraudulent."  Khoury v. Maly's of California, Inc., 14 Cal. App. 4th 612, 618-19 (1993).
14 "Unlawful" practices are "forbidden by law, be it civil or criminal, federal, state, or municipal,
15 statutory, regulatory, or court-made."  Saunders v. Super. Ct., 27 Cal. App. 4th 832, 838 (1999).
16 "Unfair" practices constitute "conduct that threatens an incipient violation of an antitrust law, or
17 violates the policy or spirit of one of those laws because its effects are comparable to or the same as
18 a violation of the law, or otherwise significantly threatens or harms competition."  Cal-Tech
19 Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 187 (1999).  The "fraudulent" prong
20 under the UCL requires a showing of actual or potential deception to some members of the public, or
21 harm to the public interest.  See id. at 180; see also McKell v. Wash. Mut., Inc., 142 Cal. App. 4th
22 1457 (2006).  The UCL 'borrows' violations of other laws and treats them as unfair business
23 practices under the unlawful prong, and also "makes clear that a practice may be deemed unfair even
24 if not specifically proscribed by some other law."  Cal-Tech, 20 Cal. 4th at 180.

25 Because Plaintiff has asserted causes of action for anticipatory breach of contract and breach
26 of the covenant of good faith and fair dealing, Wells Fargo believes the UCL claim must also be
27 based on a similar theory.  That being the case, Wells Fargo argues the claim should be dismissed
28 because "[a] person may not ordinarily recover in tort for the breach of duties that merely restate

contractual obligations." Aas v. Super. Ct., 24 Cal. 4th 627, 643 (2000).

Wells Fargo's argument based on a general remedies principle is a difficult one to maintain due to the nature of Plaintiff's allegations and the expansive nature of the UCL. Here, the conduct attributed to Wells Fargo in the SAC describes something more than just a breach of contract; to the contrary, it may constitute activity "which is both intentional and intended to harm." Erlich v. Menezes, 21 Cal. 4th 543, 552 (1999). To that end, a possible inference from Plaintiff's allegations is that, by first neglecting to collect Plaintiff's mortgage payments, then telling Plaintiff that her loan did not exist, then requiring full payment and penalties on the previously non-existent loan, and then finally invoking the acceleration clause in the Deed of Trust, Wells Fargo intended all along to induce a default and trustee's sale. And considering Wells Fargo had completed a trustee's sale once before in relation to the HELOC, such an inference is not entirely implausible. Under these alleged facts, the court concludes that Plaintiff has stated something more than just a claim for breach of contractual obligations. For that reason, the rule invoked by Wells Fargo cannot be applied to bar the UCL claim as a matter of law.

Moreover, it is notable that the "unfair" prong of the UCL - within which Plaintiff's claim falls - can encompass a wide variety of conduct, including violations of public policy or other activity that is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Gregory v. Albertson's, Inc., 104 Cal. App. 4th 845, 854 (2002). Any policy, if it exists, which temporarily wipes loans off the books to prevent the borrower from paying, to only later threaten foreclosure on the same loan absent full payment with penalties, certainly falls within the purview of the "unfair" prong.

As to Wells Fargo's companion argument, the court is not persuaded that the UCL claim stems primarily from the loan modification applications simply because it mentions a "loan modification runaround." Thus, while it is generally true that "allegations pertaining to loan modification cannot be recast under a § 17200 cause of action," Plaintiff has not attempted to plead that type of claim in the SAC. Varela v. Wells Fargo Home Mortg., No. C-12-3502 KAW, 2012 U.S. Dist. LEXIS 181323, at *20, 2012 WL 6680261, at *8 (N.D. Cal. Dec. 21, 2012). Accordingly, the court rejects this argument as a basis to dismiss the UCL claim.

### C. Injunctive and Declaratory Relief

Wells Fargo also argues for dismissal of the causes of action for injunctive and declaratory relief. The injunctive relief claim will be dismissed with prejudice since it is improperly asserted as a stand-alone claim, rather than as an aspect of the relief sought. Mbaba v. Indymac Federal Bank F.S.B., No. 1:09-CV-01452-OWW-GSA, 2010 U.S. Dist. LEXIS 6353, at *13-14, 2010 WL 424363 (E.D. Cal. Jan. 27, 2010) ("A request for injunctive relief by itself does not state a cause of action and is properly raised as a separate motion.").

As to the declaratory relief claim, the court does not concur with Wells Fargo that it is "duplicative and unnecessary" in this case. The type of relief that can be obtained through a declaration of the parties' respective rights in relation to the Deed of Trust is not available through the other causes of action asserted in the SAC.

### IV. ORDER

Based on the foregoing, Wells Fargo's Motion to Dismiss (Docket Item No. 33) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED as to the claim for injunctive relief, and that claim is dismissed with prejudice. The motion is DENIED as to all other causes of action.

Since the pleadings are now settled, Wells Fargo shall file an Answer to the SAC within 14 days of the date this order is filed.

**IT IS SO ORDERED.**

Dated: September 25, 2014

EDWARD J. DAVILA
United States District Judge