| | |
|---|---|
| ELIZABETH ANN WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A., et al.,<br><br>Defendants. | Case No. 5:13-cv-03387-EJD<br><br>**ORDER:**<br><br>**GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; AND**<br><br>**DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 77, 79 |

United States District Court
Northern District of California

Plaintiff Elizabeth Ann Williams ("Plaintiff") alleges that her mortgage lender, Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), committed detrimental loan servicing errors resulting in demands for improper late fees and charges. Plaintiff refused the pay the extra amount and claims damage to her credit from an ensuing default that Wells Fargo failed to correct.

Federal jurisdiction arises pursuant to 28 U.S.C. § 1332. Presently before the court is Wells Fargo's Motion for Summary Judgment or Partial Summary Judgment, and Plaintiff's Cross-Motion for Partial Summary Judgment. Dkt. Nos. 77, 79. The partial success of the former motion requires a denial of the latter. Accordingly, Wells Fargo's motion will be granted in part and denied in part, and Plaintiff's cross-motion will be denied, for the reasons explained below.

## I. BACKGROUND

This action stems from two loans Plaintiff obtained from a predecessor of Wells Fargo. The first was an adjustable rate mortgage for $492,800 from World Savings Bank dated December 19, 2000, which was secured by a Note and Deed of Trust recorded against residential property located on Scarlett Road in Gilroy, California. Decl. of Teri Townsend ("Townsend Decl."), Dkt.

No. 77, at Exs. A, B.[1]  The second was a $200,000 home equity line of credit ("HELOC") secured by the same Scarlett Road property, which World Savings Bank issued to Plaintiff on March 30, 2006.  Id. at Ex. C, D.

Plaintiff alleges that from December 2000 until approximately May 2007, she made payments on both loans via automatic bank withdrawals.  Second Am. Compl. ("SAC"), Dkt. No. 29, at ¶ 14.  Her vehicle was stolen in May, 2007.  Id. at ¶ 15.  Out of a concern for identity theft, Plaintiff opened a new bank account and informed the bank servicing her loans by then, Wachovia Corporation (another predecessor of Wells Fargo), that she had a new account and directed Wachovia to withdraw monthly payments for both loans from the account.  Id. at ¶¶ 16, 17.  Plaintiff alleges that payments for the mortgage loan where accurately withdrawn, but the HELOC payments were not.  Id. at ¶ 18.  Plaintiff called in an effort to resolve the issue, but such effort was unsuccessful.  Id. at ¶ 21.  According to Plaintiff, she offered to provide Wachovia a check to bring the HELOC current, but the amount Wachovia demanded "was higher and included fees."  Dep. of Elizabeth Williams ("Williams Depo."), at 57:11-22.  Although Plaintiff initially refused to pay the higher amount, she states she contacted Wachovia again "and said fine, whatever it is give me a figure, I'll bring this current and be done with it."  Id. at 57:17-58:4.

Plaintiff then discovered foreclosure and eviction notices posted on the front door of the Scarlett Road property, and alleges "a trustee's sale was actually finalized on or around August-September 2008."  Id. at 58:14-15; SAC, at ¶¶ 28, 29.  In response, Plaintiff "gathered [her] files, immediately went to the family attorney," and together they called Wachovia.  Williams Depo., at

---

[1] Plaintiff objects to Townsend's declaration based on lack of personal knowledge and hearsay.  It is true that declarations submitted in support of a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  These objections are nonetheless overruled because, as a Vice President of Loan Documentation, Townsend qualifies as "another qualified witness" under Federal Rule of Evidence 803(6), the business records exception to the rule against hearsay.  Townsend Decl., at ¶ 1; Harris v. Vance Int'l Inc., No. C-07-5991 EMC, 2009 U.S. Dist. LEXIS 46753, at *13-15, 2009 WL 1579537 (N.D. Cal. June 3, 2009).

Case No.: 5:13-cv-03387-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; AND DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

58:16-22. Plaintiff states the Wachovia representative initially denied that Plaintiff had asked for a reinstatement amount, but eventually admitted that Plaintiff had done so. Id. at 58:23-59:25.

On October 1, 2008, an attorney representing Plaintiff, Donald C. Calvello, sent a letter to Wachovia representative Michelle Johnson to confirm that Johnson "had resolved the issues." Townsend Decl., at Ex. G. The letter also confirmed Johnson's statement to Plaintiff "that the foreclosure and sale had been rescinded, that the loan would be reinstated, that [Johnson] would immediately forward the amount due for reinstatement, and that [Johnson] would correct these items on [Plaintiff's] credit report." Id.

Plaintiff alleges the trustee's sale was rescinded and the HELOC was reinstated in January, 2009, but that she was "obliged to pay unjustified fees and expenses to reinstate the loan." SAC, at ¶ 36. She also alleges that because Wells Fargo "has not corrected its official report of the HELOC situation," Plaintiff has paid hundreds of thousands of dollars in higher interest rates because creditors believe the default was Plaintiff's fault. Id.

While Plaintiff was able to resolve payment issues with the HELOC, her problems with loan payments did not end there. Plaintiff alleges that Wachovia stopped automatically withdrawing payments for the mortgage loan in October, 2008. Id. at ¶ 38. Plaintiff visited a Wachovia branch around October 2008, and was told by an employee there that her mortgage loan did not exist. Williams Depo., at 75:19-76:2.

In March, 2009, Plaintiff received a statement indicating that Wachovia had not received the last five mortgage payments, that the loan was in default, and that the total amount due was $16,576.05 "which includes $0.00 in late charges." Townsend Decl., at Ex. H; Williams Depo., at 79:14-80:17; SAC, at ¶ 42 ("In or around March 2009, Defendant sent Plaintiff a statement indicating that she was five months past due on the mortgage loan. For the first time, Plaintiff finally got a written notice from Defendant; the notice requested a substantial amount of funds to cure her so-called 'default'"). The statement also provided: "Payment must be received in the form of a cashier's check, money order or certified check within thirty days of the date of this

notice . . . . Please mail payment(s) to: Wachovia Mortgage . . . ." Townsend Decl., at Ex. H.

In response to the statement, Plaintiff went in person to a Wachovia branch with a personal, computer check for the amount needed to cure the default. Williams Depo., at 80:20-81:10. However, Plaintiff states the Wachovia branch would not accept a check solely for the amount listed in the March, 2009 statement because it did not account for additional late fees and penalties. Id. at 81:11-22.

Wachovia thereafter generated two additional notices related to Plaintiff's mortgage loan. A notice dated April 6, 2009, stated the loan had been approved for commencement of foreclosure action and that the delinquency had increased to $19,450.42. Townsend Decl., at Ex. I. Another notice dated June 30, 2009, stated that Wachovia had attempted to contact Plaintiff and requested that Plaintiff contact a loan counseling representative. Id. at Ex. J. That same notice reflected a total amount due of $28,734.88. Id. A Notice of Default was then recorded against the property on August 6, 2009, and a Substitution of Trustee was recorded on September 24, 2009. Id. at Ex. K. Notices of Trustee's Sale were recorded on May 24, 2010, August 9, 2011, and May 6, 2013. Id. at Ex. M; Request for Judicial Not., Dkt. No. 34, at Exs. K, L.

Plaintiff states that after the Notice of Default was recorded, she applied for a loan modification twelve times between 2009 and 2013. Williams Decl., at ¶ 6. All of her applications were rejected. Id.

Plaintiff initiated this case on July 19, 2013, and obtained a preliminary injunction against a trustee's sale on September 30, 2013. The following claims remain at issue: (1) violation of the Unfair Competition Law ("UCL"), California Business and Professions Code § 17200 et seq.; (2) breach of the implied covenant of good faith and fair dealing; (3) anticipatory breach of contract; and (4) declaratory relief. These cross-motions were filed upon the completion of discovery.

## II.    LEGAL STANDARD

A motion for summary judgment or partial summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

4

law." Fed. R. Civ. P. 56(a); <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000).

The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If the issue is one on which the nonmoving party must bear the burden of proof at trial, the moving party need only point out an absence of evidence supporting the claim; it does not need to disprove its opponent's claim. <u>Id</u>. at 325.

If the moving party meets the initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and designate specific materials in the record to show that there is a genuinely disputed fact. Fed. R. Civ. P. 56(c); <u>Celotex Corp.</u>, 477 U.S. at 324. A "genuine issue" for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986).

The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. <u>Id</u>. ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."); <u>Thornhill Publ'g Co. v. GTE Corp.</u>, 594 F.2d 730, 738 (9th Cir. 1979). Instead, the non-moving party must come forward with admissible evidence to satisfy the burden. Fed. R. Civ. P. 56(c).

"If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.</u>, 210 F.3d 1099, 1103 (9th Cir. 2000). "But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." <u>Id</u>.

5

### III.   DISCUSSION

#### A.   Anticipatory Breach of Contract

##### i.   Statute of Limitations

Wells Fargo argues the claim for anticipatory breach of contract accrued in October, 2008, and was barred by the statute of limitations when this action was filed on July, 2013.  Since a statute of limitations is properly raised as an affirmative defense, Wells Fargo must bear the burden of proving there is no dispute of material fact that Plaintiff filed the outside the permissible period.  See Payan v. Aramark Mgmt. Servs. Ltd. P'ship, 495 F.3d 1119, 1122 (9th Cir. 2007).

A statute of limitations is "a legislatively prescribed time period to bring a cause of action" which "'exists to promote the diligent assertion of [the] claim[], ensure defendants the opportunity to collect evidence while still fresh, and provide repose and protection from dilatory suits once excess time has passed.'"  Gilkyson v. Disney Enters., Inc., 244 Cal. App. 4th 1336, 1341 (2016).  "[A] federal court sitting in diversity is bound to apply the statute of limitations of the forum jurisdiction."  Nw. Airlines, Inc. v. Camacho, 296 F.3d 787, 789 n.1 (9th Cir. 2002).

It is well established that "statutes of limitation do not begin to run until a cause of action accrues."  Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 806 (2005).  "Generally speaking, a cause of action accrues at 'the time when the cause of action is complete with all of its elements.'"  Id. (quoting Norgart v. Upjohn Co., 21 Cal. 4th 383, 397 (1999)); accord Menefee v. Ostawari, 228 Cal. App. 3d 239, 245 (1991) ("Generally, a cause of action accrues when, under the substantive law, the wrongful act is done and liability arises, i.e., when a suit may be brought.").

Wells Fargo argues, and Plaintiff does not dispute, that a claim for anticipatory breach of contract under California law is subject to a four-year statute of limitations.  See Vu v. Prudential Prop. & Cas. Ins. Co., 26 Cal. 4th 1142, 1148 (2001) ("The ordinary statute of limitations for breach of a written contract is four years.").  "[A] cause of action for breach of contract ordinarily accrues at the time of breach regardless of whether any substantial damage is apparent or ascertainable."  Menefee, 228 Cal. App. 3d at 246.

Case No.: 5:13-cv-03387-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff's claim for anticipatory breach of contract is based on the theory that "if a party to a contract expressly or by implication repudiates the contract before the time for his or her performance has arrived, an anticipatory breach is said to have occurred." Romano v. Rockwell Int'l, Inc., 14 Cal. 4th 479, 489 (1996). When this happens, the plaintiff has an election of remedies: to either "'treat repudiation as an anticipatory breach and immediately seek damages for breach of contract, thereby terminating the contractual relation between the parties,'" or to "'treat the repudiation as an empty threat, wait until the time for performance arrives and exercise [] remedies for actual breach if a breach does in fact occur at such time.'" Id. (quoting Taylor v. Johnston, 15 Cal. 3d 130, 137 (1975)). But "whether the breach is anticipatory or not, when there are ongoing contractual obligations the plaintiff may elect to rely on the contract despite a breach, and the statute of limitations does not begin to run until the plaintiff has elected to treat the breach as terminating the contract." Id. Putting it another way, the California Supreme Court has explained:

> In the context of successive breaches of a continuing contractual obligation . . . 'where the parties did not mutually abandon or rescind it upon a breach or successive breaches, the injured party could wait until the time arrived for a complete performance by the other party and then bring an action for damages for such breaches. Respondent was not bound to treat the contract as abandoned on the first breach of it, or on any particular breach, but had his election to still rely on it, and the statute of limitations could not begin to run until it had made its election.'

Id. at 489-90 (quoting Lambert v. Commonwealth Land Title Ins. Co., 53 Cal. 3d 1072, 1078 (1991)).

In the SAC, Plaintiff alleges that Wells Fargo repudiated its contractual obligation not to foreclose on the Scarlett Road property by "imposing additional conditions not in the contract." SAC, at ¶ 82. Specifically, Plaintiff alleges Wells Fargo refused to accept regular mortgage payments "when it erroneously asserted that the mortgage loan no longer existed" and demanded payments "in excess of the mortgage due to its own errors . . . undermining Plaintiff's rights under the contract." Id. at ¶¶ 84, 85. Plaintiff also alleges she "attempted to disregard the repudiation

7

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1  because otherwise her home would have been unjustly foreclosed upon and sold without her

2  consent." Id. at ¶ 86.

3       Wells Fargo argues the anticipatory breach claim is untimely under the four-year statute of

4  limitations because Plaintiff was notified of its purported breach of the Deed of Trust in October,

5  2008, when it stopped automatically withdrawing monthly payments from Plaintiff's bank

6  account. In support, Wells Fargo cites to Plaintiff's deposition testimony in which she admitted

7  noticing that the October, 2008, payment had not been withdrawn "[w]ithin a few days of when it

8  should have been drafted." Williams Depo., at 69:9-14. Alternatively, Wells Fargo argues

9  Plaintiff was aware of all the facts underlying her claims in March, 2009, when a Wachovia bank

10  employee declined her payment because it did not include late fees and penalties.

11       Wells Fargo has not satisfied its burden on summary judgment to demonstrate that the

12  claim is barred by the statute of limitations. Although the evidence shows that Plaintiff became

13  aware of an issue with her mortgage loan in October, 2008, and then unsuccessfully attempted to

14  make a payment in 2009, those facts did not effectively commence the statute of limitations period

15  for an anticipatory breach of contract claim on either of those dates. As the mortgage documents

16  establish, Plaintiff agreed to make monthly payments in an amount calculated under the Note, and

17  Wells Fargo agreed to apply Plaintiff's payments to outstanding debt in the manner specified in

18  the Deed of Trust, for a period of 30 years. In addition, it is undisputed that from the time Plaintiff

19  noticed a problem with the payments until at least the date upon which Wells Fargo recorded the

20  Notice of Default in August, 2009, Plaintiff repeatedly contacted Wells Fargo (or Wachovia)

21  employees in an attempt to reinstate the loan without any additional penalties, charges or fees.

22  Williams Decl., at ¶ 3; Reply Separate Statement, Dkt. No. 85, at p. 9. Moreover, Wells Fargo has

23  not cited to any evidence showing that either party abandoned or rescinded the Note and Deed of

24  Trust prior to August, 2009. Viewing this evidence in the light most favorable to Plaintiff, a

25  reasonable jury could find that Plaintiff and Wells Fargo had "ongoing contractual obligations,"

26  and that Plaintiff elected "to rely on the contract" despite Wells Fargo's ongoing refusals to accept

27                                                      8

payments in breach of the contract, such that the statute of limitations did not begin to run at any time prior to August, 2009. See Romano, 14 Cal. 4th at 489. Under those circumstances, this claim asserted in July, 2013, would be timely-filed.

Wells Fargo's supplementary arguments on this topic are uncompelling. First, Wells Fargo believes the anticipatory breach claim fails as a matter of law because Plaintiff has asserted actual breaches of the Note and Deed and Trust rather than anticipatory ones. Whether that statement is accurate is of no moment, however, because the authority detailed above applies "whether the breach is anticipatory or not." Id. Thus, even if Plaintiff classified the claim as one for breach of contract as Wells Fargo would have apparently preferred, it would be subject to the same analysis.

Second, Wells Fargo implies that Plaintiff should have been aware of any breach on the earliest possible date because she is "extremely sophisticated in real estate matters" and prosecutes unlawful detainer suits on her own behalf. No legal authority is cited for this proposition, and Wells Fargo fails to explain why longstanding principles of contract law should not apply equally to Plaintiff, as they would to Wells Fargo, which is similarly sophisticated in transactions involving real estate.

Third, Wells Fargo suggests the limitations issue should be decided against Plaintiff because she did not diligently pursue her claims, citing cases discussing equitable tolling and the delayed discovery rule. That authority is inapposite since Plaintiff's claim is timely without resort to those doctrines.

In sum, the court cannot find on this record that the anticipatory breach of contract claim is barred by the statute of limitations.

### ii. Plaintiff's Performance

Wells Fargo argues there is an absence of evidence to prove the claim for anticipatory breach of contract. The court finds otherwise.

In California, "[t]he standard elements of a claim for breach of contract are '(1) the

contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom.'" Wall St. Network, Ltd. v. New York Times Co., 164 Cal. App. 4th 1171, 1178 (2008) (quoting Regan Roofing Co. v. Super. Ct., 24 Cal. App. 4th 425, 434-35 (1994)). "A bedrock principle of California contract law is that '[h]e who seeks to enforce a contract must show that he has complied with the conditions and agreements of the contract on his part to be performed.'" Brown v. Dillard's, Inc., 430 F.3d 1004, 1006 (9th Cir. 2005) (quoting Pry Corp. of Am. v. Leach, 177 Cal. App. 2d 632, 639 (1960)).

Wells Fargo challenges Plaintiff's showing on the second element, and asserts that Plaintiff cannot demonstrate her performance or an excuse for nonperformance because she failed to comply with her payment obligations under the Note and Deed of Trust. But Wells Fargo overlooks evidence in the record demonstrating that Plaintiff can make this showing. At her deposition, Plaintiff testified that after noticing her mortgage payments were no longer being automatically withdrawn from her bank account, she went to a Wachovia branch in October 2008, but was told by an employee that her mortgage loan did not exist. Though Plaintiff later received a statement in March, 2009, providing a reinstatement amount without late charges, a Wachovia employee would not accept Plaintiff's payment unless she also paid late fees and penalties. Plaintiff continued in subsequent months to resolve the payment issue, but those efforts fared no better.

While Wells Fargo disagrees with this evidence, a reasonable jury could nonetheless find that Plaintiff's obligations under the Note and Deed of Trust were excused because Wells Fargo prevented her from making payments. See Hale v. Sharp Healthcare, 183 Cal. App. 4th 1373, 1387 (2010) ("'[P]revention of performance by one party to a contract excuses performance by the other [party].'"); see also Lewis Publ'g Co. v. Henderson, 103 Cal. App. 425, 429 (1930) ("[I]t is elementary that one party to a contract cannot compel another to perform while he himself is in default."). The fact that Plaintiff may need to rely on her own statements to support such a finding does not mean, as Wells Fargo puts it, that there is "not a shred of evidence" in her favor. See

10

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Nigro v. Sears, Roebuck & Co., 784 F.3d 495, 497 (9th Cir. 2015) ("[T]he district court may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature.").  The court therefore finds that Plaintiff has produced enough evidence to raise a genuine dispute on the issue of her performance.  Consequently, Wells Fargo's argument based on a failure of proof is rejected.

### B.    Breach of the Implied Covenant of Good Faith and Fair Dealing

Wells Fargo moves for summary judgment on the claim for breach of the implied covenant of good faith and fair dealing as superfluous, or just a restatement of the breach of contract claim. For her part, Plaintiff argues the implied breach claim is not superfluous because Wells Fargo interfered with her "right to receive the benefits of the contract."  Plaintiff cites to a "loan modification runaround," during which she purportedly submitted twelve unsuccessful applications for a loan modification between October 2009 and June 20013, none of which were necessary and none of which were approved.

Unlike claims for breach of contract, a claim for breach of the implied covenant of good faith and fair dealing is not based on the breach of an explicit contractual term.  See Careau v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1394 (1990) ("A breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself.").  Indeed, "the factual elements necessary to establish a breach of the covenant of good faith and fair dealing are: (1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct."  Rosenfeld v. JPMorgan Chase Bank, N.A., 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010).  The covenant is "implied by law in every contract," and "exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*."  Guz v. Bechtel Nat'l Inc., 24 Cal. 4th 317, 349 (2000) (emphasis preserved).

11

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; AND DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Because "breach of contract and breach of the implied covenant of good faith and fair dealing are two distinct claims," May v. Semblant, Inc., No.: 5:13-CV-01576-EJD, 2013 U.S. Dist. LEXIS 139714, at *17, 2013 WL 5423614 (N.D. Cal. Sept. 27, 2013), if a defendant's "acts are directly actionable as a breach of an implied-in-fact contract term, a claim that merely realleges that breach as a violation of the covenant is superfluous." Guz, 24 Cal. 4th at 352. In other words, if the allegations for breach of the implied covenant "do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." Careau, 222 Cal. App. 3d at 1395.

Moreover, "[i]t is universally recognized the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc., 2 Cal.4th 342, 373 (1992). "Because contracts differ, the nature and extent of the duties owed under the implied covenant are also variable and 'will depend on the contractual purposes.'" Love v. Fire Ins. Exch., 221 Cal. App. 3d 1136, 1147 (1990) (quoting Egan v. Mut. of Omaha Ins. Co., 24 Cal. 3d 809, 818 (1979)). If the parties have a contractual relationship, "the implied covenant is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated in the contract." Racine & Laramie, Ltd v. Dep't of Parks & Recreation, 11 Cal. App. 4th 1026, 1032 (1992).

Plaintiff has not identified a provision of the Note or Deed of Trust which addresses loan modifications, could be read to impose an obligation on Wells Fargo to approve a loan modification, or requires Wells Fargo to refrain from a "loan modification runaround." Nor has she produced any other contract on those topics. Without this evidence, the implied covenant claim fails to the extent it is based on a theory of "unnecessary" or unsuccessful attempts at loan modifications. Guz, 24 Cal. 4th at 349-50 (holding the implied covenant of good faith and fair dealing "cannot impose substantive duties or limits on the contracting parties beyond those

12

incorporated in the specific terms of their agreement").

The claim also fails to the extent it is based on alleged interference with the contracts that do exist between the parties. Plaintiff argues Wells Fargo breached the implied covenant when it refused to accept her mortgage payments. This, however, is the same breach underlying the claim for anticipatory breach of contract and is superfluous for that reason. See Careau, 222 Cal. App. 3d at 1395.

In sum, Plaintiff has not satisfied her evidentiary burden to support a breach of the implied covenant, and has not persuasively demonstrated why it is different than the one for breach of contract. Accordingly, Wells Fargo is entitled to summary judgment on this claim. Nissan Fire & Marine Ins. Co., 210 F.3d at 1103.

### C. UCL

#### i. Statutory Framework

The UCL proscribes three varieties of competition: "acts or practices which are unlawful, or unfair, or fraudulent." Khoury v. Maly's of Cal., Inc., 14 Cal. App. 4th 612, 618-19 (1993). "Its purpose 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services,'" and its language is framed broadly in service of that purpose. Kwikset v. Super. Ct., 51 Cal. 4th 310, 320 (2011) (quoting Kasky v. Nike, Inc., 27 Cal. 4th 939, 949 (2002)). "Only injunctive relief and restitution are permissible remedies for UCL violations." Marble Bridge Funding Grp. v. Euler Hermes Am. Credit Indem. Co., No. 5:12-cv-02729-EJD, 2016 U.S. Dist. LEXIS 167776, at *24-25, 2016 WL 7034050 (N.D. Cal. Dec. 2, 2016) (citing Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1146 (2003)). "While any member of the public can bring suit under the act to enjoin a business from engaging in unfair competition, it is well established that individuals may not recover damages." Korea Supply Co., 29 Cal. 4th at 1151.

The UCL's "unlawful" prong "borrows violations of other laws and treats them as independently actionable." Daugherty v. Am. Honda Motor Co., Inc., 144 Cal. App. 4th 824, 837

13

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

(2006).  "Virtually any law - federal, state or local - can serve as a predicate."  <u>Smith v. State Farm Mut. Ins. Co.</u>, 93 Cal. App. 4th 700, 718 (2001).

For the unfair prong, California courts have struggled to define exactly what constitutes an "unfair" business practice and often apply different tests depending on whether the action is involves consumers or competitors.  <u>Drum v. San Fernando Valley Bar Ass'n</u>, 182 Cal. App. 4th 247, 253 (2010).  In the consumer context, a business practice is considered "unfair" if it "offends an established public policy" or is "immoral, unethical, oppressive, unscrupulous or substantially injurious."  <u>Gregory v. Albertson's, Inc.</u>, 104 Cal. App. 4th 845, 854 (2002) (internal quotations omitted).

Under the fraudulent prong, a plaintiff must show that "reasonable members of the public are likely to be deceived."  <u>Rubio v. Capital One Bank</u>, 613 F.3d 1195, 1204 (9th Cir. 2010).  But "'[i]n order to be deceived, members of the public must have had an expectation or an assumption about' the matter in question."  <u>Daugherty</u>, 144 Cal. App. 4th 824, 838 (2006) (quoting <u>Bardin v. DaimlerChrysler Corp.</u>, 136 Cal. App. 4th 1255, 1275 (2006)).

### ii.  Plaintiff's UCL Allegations

In the SAC, Plaintiff alleges Wells Fargo violated the UCL in the following ways:

1.      Causing Plaintiff to initially default on mortgage payments by neglecting to draw the funds from Plaintiff's bank account.  SAC, at ¶ 72.

2.      Initiating foreclosure proceedings and recording a Notice of Default against the Scarlett Road property even though Plaintiff offered payment of arrears and regular payments thereafter.  <u>Id</u>.

3.      Breaching the implied covenant of good faith and fair dealing, "systematically" breaching the contract, and refusing to adhere to the contract Wells Fargo relied upon, i.e., the Note and Deed of Trust.  <u>Id</u>.

4.      Putting Plaintiff through a "loan modification runaround," which may have been "the product of deliberate corporate policy rather than a good faith effort to arrange the loan

14

modification. Id.

5.      Scheduling a trustee's sale in 2013, "when Plaintiff had never refused to pay her monthly mortgage nor the simple arrears." Id. at ¶ 74.

In addition, Plaintiff clarifies in the opposition to this motion that the "UCL cause of action rests on Defendant's deceptive representations that seeking a loan modification twelve separate times was an appropriate way to mitigate damages caused by Defendant's breach of contract."

### iii.      Standing

Wells Fargo challenges Plaintiff's standing to assert a UCL claim. A plaintiff has standing under Business and Professions Code § 17204 "only if he or she (1) 'has suffered injury in fact,' and (2) 'has lost money or property as a result of the unfair competition.'" Hall v. Time Inc., 158 Cal. App. 4th 847, 852 (2008). In order to satisfy § 17204, a plaintiff must "'(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim.'" Lueras v. BAC Home Loans Servicing, LP, 221 Cal. App. 4th 49, 81 (2013) (quoting Kwikset, 51 Cal. 4th at 322).

Significantly, the California Supreme Court has specified that "[t]here are innumerable ways in which economic injury from unfair competition may be shown." Kwikset, 51 Cal. 4th at 323. For example, "[a] plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." Id.

In light of this standard, Wells Fargo's contention that Plaintiff lacks standing to assert a UCL claim because she "cannot plausibly allege any damages arising from Wells Fargo's purported conduct" is misplaced. Plaintiff has identified an economic injury: the nonjudicial foreclosure proceedings initiated against the Scarlett Road property which would extinguish

15

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1    Plaintiff's property interest if taken to completion.  See Jenkins v. JPMorgan Chase Bank, N.A.,

2    216 Cal. App. 4th 497, 522 (2013), overruled on other grounds by Yvanova v. New Century

3    Mortg. Corp., 62 Cal. 4th 919 (2016).  She has also shown the impending loss was the result of an

4    alleged unfair business practice: Plaintiff would not have defaulted or missed payments had Wells

5    Fargo continued automatic mortgage withdrawals or accepted Plaintiff's efforts to tender the past

6    due amount without added fees and costs.  This species of unfair practice encompasses allegation

7    numbers 1, 2, 3 and 5, as listed in the preceding section.

8        However, Plaintiff has not established a causal link between allegation number 4 - or the

9    related clarification from her opposition - and an economic injury.  Nothing in the record shows

10   she lost any money from engaging in loan modification requests, and she cannot rely on costs

11   incurred in preparing and assembling materials for applications.  Lueras, 221 Cal. App. 4th at 82

12   (holding that costs related to loan modification applications are de minimis and insufficient to

13   qualify as an injury under § 17204)  Moreover, there is no evidence to suggest the loan

14   modification applications or the "loan modification runaround" had any effect on the initiation of

15   the foreclosure proceedings and the ensuing risk to Plaintiff's property interest.  In fact, Plaintiff

16   did not apply for a loan modification until after the Notice of Default had been recorded and

17   foreclosure proceedings initiated.

18       For these reasons, Plaintiff has standing to assert a UCL claim based on Wells Fargo's

19   practices that allegedly caused a default on the mortgage loan and initiated foreclosure

20   proceedings.  In contrast, Plaintiff does not have standing for a UCL claim based on the loan

21   modification applications.[2]

22       **iv.    Unlawful, Unfair or Fraudulent Practices**

23       The court now considers whether allegation numbers 1, 2, 3, and 5 are actionable under the

24   UCL.  Wells Fargo argues these allegations cannot support a UCL claim because they merely

25   _____

26   [2] Since Plaintiff has not established standing to assert a UCL claim based on loan modification
     allegations, her cross-motion for partial summary judgment based on that claim will be denied.

27   Case No.: 5:13-cv-03387-EJD

16

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
     SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; AND DENYING
     PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

restate a breach of contract. Wells Fargo is correct.

In general, "[a] person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations." Aas v. Super. Ct., 24 Cal. 4th 627, 643 (2000). "[C]onduct amounting to a breach of contract becomes tortious when it also violates a duty independent of the contract arising from principles of tort law." Id. In line with this authority, "[a] breach of contract . . . may form the predicate for a UCL claim, 'provided it also constitutes conduct that is unlawful, or unfair, or fraudulent.'" Arce v. Kaiser Found. Health Plan, Inc., 181 Cal. App. 4th 471, 489 (2010) (quoting Puentes v. Wells Fargo Home Mortg., Inc., 160 Cal. App. 4th 638, 645 (2008)). "With respect to the unfairness prong . . . [California] appellate courts have recognized that 'a systematic breach of certain types of contracts (e.g., breaches of standard consumer or producer contracts involved in a class action) can constitute an unfair business practice under the UCL.'" Id. at 489-90 (quoting Smith v. Wells Fargo Bank, N.A., 135 Cal. App. 4th 1463, 1483 (2005)).

The allegations for which Plaintiff has standing to assert a UCL claim are plainly predicated on Wells Fargo's alleged breach of Note and Deed of Trust. Allegation number 1, which references Plaintiff's default on mortgage payments and from which allegation numbers 2 and 5 flow, is simply a variation of the facts underlying the breach of contract claim.

But that established, there is nothing in the evidentiary record to support the breach of a duty independent of the parties' contracts. Moreover, this single-plaintiff action is not the type that can support a UCL claim based on allegation number 3, nor is there evidence to support "systematic" breaches of contract in any event. And Plaintiff has not proven the theory that rendered this claim plausible enough to overcome a motion to dismiss; nothing in the record reflects a Wells Fargo "policy which temporarily wipes loans off the books to prevent the borrower from paying, to only later threaten foreclosure on the same loan absent full payment with penalties." Dkt. No. 56 at 6:18-21.

Because evidence of a UCL violation is lacking, Plaintiff has not satisfied her burden in

17

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1  response to Wells Fargo's motion.  <u>Nissan Fire & Marine Ins. Co.</u>, 210 F.3d at 1103.  Wells Fargo

2  is entitled to summary judgment on this claim, and the court need not address the additional

3  arguments.

4      **D.   Damages**

5      Wells Fargo argues that Plaintiff cannot recover damages as a matter of law for several

6  reasons.  The court rejects each one.

7          **i.   Exculpatory Clause**

8      The "exculpatory clause" of the Note provides:

9            4.     FAILURE TO MAKE ADJUSTMENTS

10            If for any reason Lender fails to make an adjustment to the interest
11            rate or payment amount as described in this Note, regardless of any
          notice requirement, I agree that Lender may, upon discovery of such
12            failure, then make adjustments as if they had been made on time.  I
          also agree not to hold Lender responsible for any damages to me
13            which may result from Lender's failure to make the adjustment and
          to let the Lender, as its option, apply any excess monies which I may
14            have to partial Prepayment of unpaid Principal.

15      Wells Fargo interprets this provision to encompass the disputed late charges and fees

16  applied to Plaintiff's mortgage payments, such that it believes Plaintiff agreed not to hold Wells

17  Fargo responsible for any damages resulting from its failure to make an adjustment of those

18  charges and fees.  To determine whether Wells Fargo's characterization is accurate, the court must

19  utilize conventional legal principles to interpret the Note.

20      The goal of contract interpretation is to give effect to the parties' mutual intent.  Cal. Civ.

21  Code § 1636; <u>Bank of the West v. Super. Ct.</u>, 2 Cal. 4th 1254, 1264 (1992).  "Such intent is to be

22  inferred, if possible, solely from the written provisions of the contract."  <u>In re Marriage of Lafkas</u>,

23  237 Cal. App. 4th 921, 932 (2015) (citing Cal. Civ. Code § 1639).  "The 'clear and explicit'

24  meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the

25  parties in a technical sense or a special meaning is given to them by usage' . . . controls judicial

26  interpretation."  <u>Id.</u> (citing Cal. Civ. Code §§ 1638, 1644).  "A contract may be explained by

                                          18

27
28  ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; AND DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

reference to the circumstances under which it was made, and the matter to which it relates." Cal. Civ. Code § 1647. But "[h]owever broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract." Cal. Civ. Code § 1648. Furthermore, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code § 1641.

Under these rules, Wells Fargo's interpretation fails. The Note provides for an interest rate that adjusts on a monthly basis calculated according to a defined index, which in turn could result in ongoing changes to the payment obligation. To emphasize that feature, the Note states the monthly payment "amount will change" on the fifteenth day of February each year. And notably, the "exculpatory clause" immediately follows the Note's payment provisions none of which discuss late payment penalties. Thus, when construed in relation to the Note as a whole, it is apparent the "exculpatory clause" refers to changes "to the interest rate or payment amount" calculated according to the Note's adjustable features rather than to late charges and fees. Wells Fargo has not convincingly argued the parties mutually intended otherwise in the context of an adjustable rate mortgage note, nor has it produced additional evidence to support its position. As such, the court does not interpret the "exculpatory clause" as barring Plaintiff's damages.

### ii. Special Damages

Wells Fargo argues that Plaintiff has not adequately described contractual special damages and cannot seek them now. As opposed to general damages, which for breach of contract "are ordinarily confined to those which would naturally arise from the breach, or which might have been reasonably contemplated or foreseen by the parties at the time they contracted, as the probable result of the breach" (Glendale Fed. Sav. & Loan Ass'n v. Marina View Heights Dev. Co., Inc., 66 Cal. App. 3d 101, 125 (1977)), special damages "are unusual for the type of claim in question - that are not the natural damages associated with such a claim." Avitia v. Metro. Club, 49 F.3d 1219, 1226 (7th Cir. 1995). For that reason, special damages "must be specifically stated" in the complaint. Fed. R. Civ. P. 9(g); Isuzu Motors Ltd. v. Consumers Union of United States,

19

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Inc., 12 F. Supp. 2d 1035, 1047 (C.D. Cal. 1998) ("In a diversity case, whether the requirement

that special damages be pleaded specifically is a matter of federal law.").

"A bare allegation of the amount of pecuniary loss alleged is insufficient," but a "plaintiff

is not required to allege a specific dollar amount." Isuzu Motors Ltd., 12 F. Supp. 2d at 1047.

Special damages allegations must be enough to "inform defending parties as to the nature of the

damages claimed in order to avoid surprise; and to inform the court of the substance of the

complaint." Great Am. Indem. Co. v. Brown, 307 F.2d 306, 308 (5th Cir. 1962).

Here, Plaintiff has "specifically stated" the type of special damages alleged. The SAC

repeatedly informs Wells Fargo that Plaintiff "expended time and money and lost business

opportunities in a multi-year attempt to deal with [Wells Fargo's] incompetence and errors," and

that "Plaintiff's credit rating has also been negatively impacted leading to far higher interest rates

and payments on credit she obtains." SAC, at ¶ 89. These allegations are sufficient to inform

Wells Fargo of the nature of Plaintiff's alleged special damages, such that further investigation

could be undertaken through discovery.[3] There is no opportunity for unfair surprise.

Wells Fargo also states in passing that "credit damages would require proof of a decline in

credit rating and how the change in rating actually harmed plaintiff," and suggests that Plaintiff

cannot make this showing because her credit score has increased. No authority is cited for the

proposition that an actual decline is required to prove credit damages, particularly when it is

equally possible to argue that Plaintiff's credit score would have increased even more but for

Wells Fargo's servicing error. In any event, Plaintiff's burden in response to Wells Fargo's

motion is to "produce some evidence, other than speculation or guesswork" sufficient to create a

genuine dispute of material fact. Guidroz-Brault v. Missouri Pac. R.R. Co., 254 F.3d 825, 829

(9th Cir. 2001). Because Plaintiff has submitted an expert report detailing her credit damages that

---

[3] Even if there was a pleading defect with respect to special damages, Wells Fargo cannot
reasonably argue it did not receive adequate notice of what damages Plaintiff was claiming
through other information produced in this proceeding. See Bowles v. Osmose Utils. Servs., 443
F.3d 671, 675 (8th Cir. 2006).

Case No.: 5:13-cv-03387-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; AND DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1    has not been challenged as speculative, she has satisfied her burden on that issue.

2                    iii.    Other Damages Arguments

3          Wells Fargo remaining arguments do not require extensive discussion. That Plaintiff

4    cannot recover credit damages in tort is irrelevant to whether such damages can be recovered for

5    breach of contract, which claim endures at least past this motion. Similarly, Plaintiff has produced

6    evidence of damages in addition to requesting attorney's fees, thereby negating the assumption

7    underlying Wells Fargo's argument on that issue.

8          E.    Declaratory Relief

9          As a final argument, Wells Fargo contends the declaratory relief claim is "nullity" because

10   it is tethered to Plaintiff's other claims, and fails along with them. Since one of those claims

11   survives, this argument is ineffective.

12   IV.   ORDER

13         Based on the foregoing, Wells Fargo's Motion for Summary Judgment or Partial Summary

14   Judgment (Dkt. No. 77) is GRANTED IN PART and DENIED IN PART. The motion is

15   DENIED as to the anticipatory breach of contract and declaratory relief claims. The motion is

16   otherwise GRANTED.

17         Plaintiff's Cross-Motion for Partial Summary Judgment (Dkt. No. 79) is DENIED.

18

19         **IT IS SO ORDERED.**

20   Dated: April 14, 2017

21                                          _____
22                                          EDWARD J. DAVILA
                                            United States District Judge
23

24

25

26

27                                          21

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
     SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; AND DENYING
     PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT